No. 46,492

Hanne Zeitner, widow and as conservator of the estate of Christopher Zeitner, minor dependent of Peter O. A. Zeitner, deceased, *Appellant,* v. Floair, Inc., and Aetna Casualty & Surety Company, *Appellees.*

(505 P. 2d 661)

Opinion filed January 20, 1973.

*Paul L. Thomas,* of Wichita, argued the cause, and *Lester C. Arvin, Kay K. Arvin* and *Rodney H. Busey,* also of Wichita, were on the brief for the appellant.

*Frederick L. Haag,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Charles J. Woodin,* of the same firm was with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal in a workmen's compensation case by the widow as conservator of the estate of Christopher Zeitner, the minor dependent of the deceased workman.

The issue on appeal is whether the trial court properly computed the wages of the deceased workman pursuant to K. S. A. 44-511(2).

Under the trial court's computation the decedent's minor dependent was awarded the minimum death benefit.

In the proceedings before the examiner the surviving spouse of the decedent, Hanne Zeitner, waived her rights to compensation in favor of the minor son of the parties, Christopher Zeitner. The district court entered an award of $2,500 in favor of Hanne Zeitner as conservator of the estate of Christopher Zeitner, and appeal has been duly perfected.

Peter O. A. Zeitner, the deceased workman, was employed by Floair, Inc., (respondent-appellee) to pilot an airplane from Wichita, Kansas, to Bogota, Colombia. This particular flight was the first decedent had performed for the company. The flight commenced on August 14, 1968, and on the same day while piloting the aircraft the decedent was killed when the plane was involved in a mid-air collision near Cleburne, Texas. The personal injuries resulted in the decedent's immediate death. At the time of his death, the decedent left his widow, Hanne Zeitner, and a two year old minor son, Christopher Zeitner. Prior to the accident the decedent had been a graduate student and part-time lecturer in Spanish at Wichita State University.

Merle L. Patterson, vice-president of Floair, Inc., testified the decedent came to his place of business on April 5, 1968, and made application for employment. He stated the appellee had two classes of pilots, those who were available to fly trips seven days a week, twenty-four hours a day, who were called full-time pilots, and other pilots who had other jobs. These pilots were categorized as part-time pilots. At the time the deceased made application, the appellee had fifteen full-time pilots who were given priority to make trips. Appellee also had approximately forty-five part-time pilots. The decedent was classified as a part-time pilot due to his work at Wichita State University. All pilots were paid at the same rate.

Another witness, Dr. Eugene Savaiano, testified that until August, 1968, the decedent had been a graduate student and lecturer at the University. Lecturers were teachers who are hired in emergency situations when there are not available instructors, teachers or professors. The decedent was scheduled to continue his duties as a lecturer in September, 1968, if there was an enrollment. The decedent was not called by the appellee to perform any services until August 14, 1968, when he was hired to pilot an airplane from

Wichita, Kansas, to Bogota, Colombia. For this work he was to received $195 which was computed by paying him seven cents per nautical mile flown. The contemplated distance was 2,746 nautical miles. The normal flying time for this trip was five days.

The decedent had completed fifteen to twenty per cent of the total distance of the trip at the time of the accident.

It was stipulated before the Workmen's Compensation Examiner that the fatal accident arose out of and in the course of the decedent's employment. The only issue remaining to be determined was the amount of compensation to be paid. The examiner found the minor son of the decedent, Christopher Zeitner, was totally dependent upon the decedent for support. In determining the decedent's wages the examiner found the average weekly wage was $10 per week and awarded the statutory minimum death benefit of $2,500 pursuant to K. S. A. 1969 Supp. 44-510b(a). It was from the examiner's computation of wages that appeal was taken to the district court.

The appellant contends the trial court erred in finding the provisions of K. S. A. 44-511(2) were not applicable to the facts in this case.

Under K. S. A. 1971 Supp. 44-556, the Supreme Court on appeal in a Workmen's Compensation Case is limited to determining questions of law (*Morgan v. Auto Transports, Inc.,* 192 Kan. 139, 141, 386 P. 2d 230.)

We are again called upon to construe K. S. A. 44-511 which provides in pertinent part:

"(1) Whenever in this act the term 'wages' is used it shall be construed to mean the money rate at which the service rendered is recompensed *under the contract of hiring in force at the time of the accident.* . . .

"(2) Where prior to accident the rate of wages is fixed *by the output of the employee* the *daily wage* shall be calculated by dividing the number of days the workman was *actually employed* into the total amount the employee earned during the preceding six (6) months, or so much thereof as shall refer to employment by the same employer. Where the rate of wages is fixed by the hour the daily wage shall be found by multiplying the hourly rate by the customary number of working hours constituting an ordinary day in the character of work involved. *In any case the weekly wage shall be found by multiplying the daily wage by five (5).* . . . Five (5) days shall constitute a minimum week.

"(3) In any case, the average *yearly wage* shall be found by multiplying the *weekly wage,* determined as hereinbefore provided by fifty-two (52)." (Emphasis added.)

Under the statute the amount of compensation to be paid is to be determined by the contract of hiring in force at the time of the accident. At the time of the accident, the decedent was hired under a contract to ferry a plane from Wichita, Kansas, to Bogota, Colmbia, a distance of approximately 2,746 nautical miles. In return the decedent was to receive seven cents per nautical mile flown. The anticipated length of employment was five days.

The language of 44-511(2), *supra*, speaks of two types of wage rates, one fixed by the output of the employee and the other fixed by the hour.

Since the decedent's wage rate was set at seven cents per nautical mile flown, his wages were fixed "by the output of the employee."

Under these circumstances the statute provides the employee's daily wage shall be calculated by dividing the number of days the workman was *actually employed* into the total amount which he had earned in the preceding six months, or so much thereof as shall refer to employment by the same employer.

The trial court found the decedent was employed by the appellee as of April 5, 1968, when he made application for employment to respondent. Using this date as the beginning of employment, the average weekly wage computed in accordance with the rules above set forth in 44-511, *supra*, is a mere pittance. The resultant calculation establishes the average yearly wage so small that the claimant is awarded only the minimum death benefit of $2,500. (K. S. A. 1969 Supp. 44-510b [*a*].)

The appellant contends the trial court's finding that the decedent commenced employment on April 5, 1968, the day he made application for work, is erroneous. The appellant asserts the decedent was actually employed on August 14, 1968, the day he first performed work for the respondent.

Under the appellant's theory, the decedent's total pay for the trip had been computed at $195 based on seven cents per nautical mile. Since the anticipated length of employment was five days, the daily wage is determined by dividing five into $195, which results in a daily wage of $39. By using the statutory formula, one into $39 equals $39 per day, which would be the daily wage.

The weekly wage is found by multiplying $39 by five. This gives $195 as a weekly wage. Continuing to follow the statute, the average yearly wage is to be found by multiplying the weekly wage of $195 by 52, which equals $10,140. Using this theory the resulting figure

authorizes the claimant to recover an award of the maximum death benefit of $16,500. (K. S. A. 1969 Supp. 44-510b [a].)

The decisive question is when did the decedent become an employee within the meaning of K. S. A. 44-511(2)?

The precise language of the statute (44-511[2], *supra*) commanding our attention on this point reads:

". . . The daily wage shall be calculated by dividing the number of days the workman was *actually employed* into the total amount the employee earned during the preceding six (6) months. . . ." (Emphasis added.)

We find no Kansas cases, and our attention has been directed to none, construing the meaning of "actually employed," as used in the statute.

The respondent relies on *Armstrong v. Manpower, Inc.,* 194 Kan. 753, 401 P. 2d 903, and *Casebeer v. Casebeer,* 199 Kan. 806, 433 P. 2d 399, in support of its argument that the statutory formula is not applicable herein. These cases are distinguishable and have no direct bearing on the question here presented because the workman in each of these cases was paid wages on an *hourly* basis.

The State of New Jersey has a statute worded almost identically to ours and their Supreme Court has been called upon to determine the meaning of "actually employed." The New Jersey statute, N. J. S. A. 34:15-37, reads:

". . . Where prior to the accident, the rate of wages is fixed by the output of the employee, the daily wage shall be calculated by dividing the number of days the workman was actually employed into the total amount the employee earned during the preceding six months, or so much thereof as shall refer to employment by the same employer."

In *Davidson v. Nathanson Furniture Stores, Inc.,* 126 N. J. L. 430, 20 A. 2nd 61, the workman was a salesman and was employed on October 16, 1939. He did not go to work at that time, but did report for work a week later. In connection with the above statute the court held it was not the day of hiring that controls, but the days on which the workman was actually employed. (See also, *Highway Freight Co. v. Workmen's, &c., Bureau,* 125 N. J. L. 168, 15 A. 2nd 272, 274, affirmed in *Highway Freight Co. v. Department of Labor,* 126 N. J. L. 367, 19 A. 2d 459.)

Rules adopted by the Director of Workmen's Compensation also have a bearing on the point under consideration. Under Volume 2, Kansas *Administrative Regulations, Computation of Wages,* 51-11-1, published and filed with The Revisor of Statutes in conformity with

K. S. A. 77-416 and K. S. A. 1971 Supp. 44-573, the following is stated:

". . . The wages of a part-time employee, for the purpose of computing the compensation payment, are to be computed the same as that of a full-time employee in the same or similar work. . . ."

It is readily apparent the classification of the deceased workman by the respondent as a part-time pilot is immaterial under the foregoing rule.

Under Volume 2, Kansas Administrative Regulations, Wholly Dependent Persons, 51-10-2 the following example is given:

"*For example:* Assume that the workman had worked but one hour for an employer when he met with accidental death arising out of and in the course of his employment; that the hourly rate of pay was $3.00; that the customary number of working hours constituting an ordinary day in the character of work involved was eight; that the customary number of working days constituting an ordinary week in the character of work involved was five; that workman's average weekly wage will be $3.00 × 8 × 5, or $120. Overtime is to be computed when involved."

In construing the statute here in question we think it immaterial that the decedent, when he made application for employment with the respondent, requested only flights to South America because he wanted to further his linguistic experience as a Spanish instructor. The evidence disclosed he would have an opportunity for, at most, only three flights to South America in one year. The respondent relies on this evidence and cites *State Road Com. v. Ind. Com.,* 56 Utah 252, 190 Pac. 544 (1920) for the proposition that no person can possibly have an earning capacity in a particular employment greater than the opportunities afforded by that employment.

What the legislative intent was determined to be in other states on workmen's compensation statutes dissimilar to our own is not of great significance in construing the language of the statute presently under consideration.

We think "actually employed" as used in 44-511(2) means the time the workman was actually employed and on the job, and it is not the day of hiring that controls. We think the *Davidson* decision in New Jersey persuasive on this point.

When so construed, the decedent was "actually employed" only one day within the meaning of 44-511(2), *supra,* when he met with an accident which caused his death.

For the reasons heretofore stated we hold the trial court erred as a matter of law in construing 44-511(2), *supra,* and in finding the

deceased workman was an employee of the respondent 18.71 weeks. The language used by the legislature in 44-511(2), *supra*, literally applies to the factual situation here presented.

When it is found that the deceased workman was employed only one day at the time of his fatal accident, for which he was to be recompensed $39 under the contract of hiring in force at the time of the accident, it follows that his weekly wage was $195, and the average yearly wage was $10,140 within the meaning of 44-511, *supra*. When the formula set forth in K. S. A. 1969 Supp. 44-510b ($a$) is applied, the death benefit is limited to $16,500, which was the statutory maximum at the time this litigation arose.

The judgment of the lower court is reversed with directions to enter judgment for the appellant for compensation due the minor dependent in accordance with the views expressed in this opinion.