(697 P.2d 85)

No. 57,201

ALLAN T. OSMUNDSON, *Appellant,* v. SEDAN FLORAL, INC., and FLORIST'S MUTUAL INSURANCE COMPANY, *Appellees.*

Opinion filed March 29, 1985.

*Tom Clarkson,* of Wichita, for appellant.

*William R. Smith* and *Stephen J. Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, for appellees.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

ABBOTT, J.: The claimant, Allan T. Osmundson, appeals in a workers' compensation case, contending that the trial court did not have jurisdiction and that it erred in computing his average weekly wage.

We are satisfied the trial court had jurisdiction. The Workers' Compensation Director is required to enter an order in every workers' compensation case, even when review is not requested, and an appeal may be taken from any order of the director. K.S.A. 1984 Supp. 44-551; K.S.A. 1984 Supp. 44-556(a). If a review by the director is not requested within 10 days after the administrative law judge makes an award, the director must enter an order. The parties then have 20 days from the director's order within which to file a notice of appeal to the district court.

In this case the notice of appeal to the district court states that it is from the order of the director made on March 29, 1984. A review of the record shows that the director *received* the administrative law judge's order on March 29, but that his order of approval of the administrative law judge's award was not *filed* until April 9.

A similar situation was presented in *Elwood v. General Motors Corporation,* 200 Kan. 686, 438 P.2d 44 (1968), wherein the notice of appeal stated the claimant was appealing from the order of the administrative law judge entered on January 11, 1967. The appeal should have been from the order of the director

entered on January 23, 1967. Finding that the incorrectly worded notice of appeal substantially complied with the requirements of the statute, the Supreme Court said:

"It cannot be denied that the notice of appeal is, strictly speaking, incorrectly worded. It should have stated that the appeal was from the order of the *director* of January 23—and counsel for claimant—admitting a 'clerical error'—so concedes. On the other hand, there being only one 'award' here—may it be said that respondent was in any way misled? We think not. Under the facts of this case—and, given the liberal construction to which it is entitled (*Russell v. Lamoreaux Homes, Inc.,* 198 Kan. 447, 424 P.2d 561 [1967])—the notice of appeal was, as a practical matter, from the order of the director, for the order of the examiner and that of the director were one and the same. Although its literal wording is not recommended as a 'model' for future guidance to parties seeking to appeal from awards of the director—we believe there was a substantial compliance with the provisions of K.S.A. 44-556." 200 Kan. at 688-89.

The same is true here. The "clerical error," stating the date the director received the administrative law judge's award rather than the date he entered his order of approval, is not misleading. Only one award was in question, and in approving the order of the administrative law judge, his "decisions, findings, awards or rulings" became those of the director. The notice of appeal substantially complied with the requirements of K.S.A. 1984 Supp. 44-556. The trial court did not err in concluding it had jurisdiction.

The trial judge found, and the parties agree, that the earnings of the claimant were determined by his output, not on an hourly, weekly or monthly rate of pay and that K.S.A. 44-511(b)(5) was the proper statute to use in determining his average weekly wage. That statute provides in pertinent part:

"[I]f the employee has been employed by the employer at least one (1) calendar week immediately preceding the date of the accident, the average gross weekly wage shall be the gross amount of money earned during the number of calendar weeks *so employed,* up to a maximum of twenty-six (26) calendar weeks immediately preceding the date of the accident, divided by the number of weeks *employed, or by twenty-six (26) as the case may be* . . . . In making any computations under this paragraph (5), work weeks during which the employee was on vacation, leave of absence, sick leave or was absent the entire work week because of illness or injury shall not be considered." (Emphasis supplied.)

The employer's work is seasonal in nature insofar as claimant is concerned and claimant had worked eleven of the preceding 26 weeks. During the 26-week period, work was not available to claimant for 13 of 14 consecutive weeks.

He earned $3,583.26 during the 11-week period he was employed, and the administrative law judge divided the amount earned by 11 to arrive at an average weekly wage of $325.75. Review by the director was not requested. The trial judge apparently used the figures supplied by the employer and arrived at an average weekly wage of $119.75 by dividing 26 weeks (10 worked—16 not worked) into $3,113.43 (actual wages earned 9-2-82 through 2-24-83). The figures used by the trial judge do not include the last 9 days the claimant worked but do include 9 days the claimant did not work, which should not be considered because they are outside the 26-week statutory period.

Claimant was eligible for and was paid unemployment compensation when he was not working for respondent. The employer testified he considered claimant a full-time employee. The employer also testified that "the unemployment people" considered it a "layoff" when drivers such as claimant had no work, but that he, the employer, considered it "an interruption" even though the period when no work was available might last several months.

The employer argues that claimant was "employed" during the entire six-month period preceding the accident, even though he did not actually work during a number of those weeks. "Employee" is defined in K.S.A. 1984 Supp. 44-508(b) as "any person who has entered into the employment of or works under any contract of service," and the employer contends that claimant worked under a specific contract of service for Sedan Floral.

This court is to determine legislative intent and nothing more; it cannot nullify legislative will nor concern itself with the wisdom of legislative policy. *In re Estate of Bowman,* 172 Kan. 17, 22, 238 P.2d 486 (1951). What we might consider fair and equitable under the circumstances is immaterial. In construing the Workmen's Compensation Act, the general rules of statutory construction are our guideline. We are instructed to broadly interpret the statute to achieve the purpose of the act and carry out legislative intent. See *Hormann v. New Hampshire Ins. Co.,* 236 Kan. 190, 200, 689 P.2d 837 (1984).

The statute itself does not define "employed." Black's Law Dictionary 617 (4th ed. rev. 1968) states that the term "signifies both the act of doing a thing and the being under contract or orders to do it." Obviously, pursuant to the Workmen's Com-

pensation Act, the term "employ" is not to be construed in a strict sense but in such a manner that it will accomplish the purpose of the act and be consistent with legislative intent.

Another statute, the Employment Security Law, is designed with the broad purpose of protecting employees. It defines "unemployment" by stating that "an individual shall be deemed 'unemployed' with respect to any week during which such individual performs no services and with respect to which no wages are payable to such individual." K.S.A. 1984 Supp. 44-703(m).

There were comprehensive amendments to the Workmen's Compensation Act in 1974. (L. 1974, ch. 203.) Prior to those changes, the provision for computing an employee's average gross weekly wage was as follows:

"Where prior to accident the rate of wages is fixed by the output of the employee the daily wage shall be calculated by dividing the number of days the workman was actually employed into the total amount the employee earned during the preceding six (6) months . . . ." K.S.A. 44-511(2)(Weeks).

Interpreting the meaning of "actually employed," Our Supreme Court said in *Zeitner v. Floair*, Inc., 211 Kan. 19, 24, 505 P.2d 661 (1973): "We think 'actually employed' as used in 44-511(2) means the time the workman was actually employed and on the job, and it is not the day of hiring that controls." The Court held that the trial court erred as a matter of law in finding that the deceased workman had been an employee of the respondent for 18.71 weeks at the time of his accident. Although the workman had been hired and was on call during those 18.71 weeks, the Court found that he was actually employed only one day—the day he was flying for the respondent and met with his fatal accident.

A review of the legislative history of the 1974 amendments made after the Zeitner case reveals an intent to clarify the language in the various sections of 44-511, and an intent to increase the amount of benefits available through the inclusion of several fringe benefits in the computation. Nothing in the legislative history reveals an intent to change the meaning of "actually employed" as interpreted by the court in *Zeitner* when the word "actually" was deleted from the statute. As we view it, the legislature deleted the word because it was redundant.

Two other cases, *McKinstry v. Coal Co.*, 116 Kan. 192, 194, 225

Pac. 743 (1924), and *Horn v. Elm Branch Coal Co.*, 141 Kan. 518, 41 P.2d 751 (1935), involved the computation of wages on an output basis in the mining business. In *McKinstry* the workman did not work full-time because the mine did not operate full-time. In *Horn* the workman was on call as a shot-firer, but not paid during a eight-month period while the mine was not mining hard coal. In both cases, the Court relied on a portion of the statute which stated that wages should be "undiminished by loss due to . . . other unavoidable cause." In neither case were the weeks in which the workman did not work included in arriving at the average wage.

As we construe K.S.A. 44-511(b)(5), the legislative intent is for the word "employed" to continue to mean the time the worker is employed and on the job. It does not intend for the average weekly wage computation to include time during which a worker is entitled to draw unemployment compensation and is free to seek and accept other employment until work is again available from the regular employer.

The trial court should not have included the weeks when no work was available to claimant. It does not matter whether claimant is designated as having been "laid off" or placed on "leave of absence" status; the determining factor is that the worker is not employed because there is no work available for him to perform. The end result is the same. Those weeks when the worker is not employed are not to be used in computing his average weekly wage pursuant to K.S.A. 44-511(b)(5).

Reversed and remanded with directions to reinstate the award of the director.