622 So.2d 515 (1993)
Benny L. WALDORF, Appellant,
v.
JEFFERSON COUNTY SCHOOL Board and Gallagher Bassett Services, Appellees.
No. 92-273.
District Court of Appeal of Florida, First District.
July 22, 1993.
Rehearing Denied August 25, 1993.
Lorin J. Lee, The Morton Law Center, P.A., Tallahassee, for appellant.
J. Craig Knox of Fuller, Johnson & Farrell, P.A., Tallahassee, for appellees.
WEBSTER, Judge.
The sole issue raised in this workers' compensation case is whether the judge of compensation claims erred as a matter of law by choosing an improper method by which to calculate claimant's average weekly wage. Because the nature of claimant's employment does not fit neatly into any of the alternatives afforded by section 440.14, Florida Statutes (1989), for computation of average weekly wage; and because we conclude that the method used by the judge of compensation claims to arrive at an average weekly wage was fair and reasonable under the circumstances; we affirm.
In February 1991, claimant was injured while in the course of his employment as a substitute school bus driver. At the time of his injury, claimant was employed pursuant *516 to an annual contract, which expired at the end of the school year. Claimant would be called to work on an "as needed" basis, to replace one of the regular drivers who, for whatever reason, was unable to work. However, claimant had the right to decline to work when called. There was no guarantee regarding either minimum number of hours or minimum pay. Claimant, like the other substitute drivers, was paid $6.53 per hour for each hour actually worked. Although there was no guaranteed minimum number of hours, substitute drivers could not work more than twenty per week. Substitute drivers did not normally work during the summer months. Claimant had worked as a substitute driver for at least the two previous years, under the same terms of employment.
During the entire 1990-91 school year prior to his accident, claimant had worked only sixty-six hours. He had worked one day in September, nine days in January and six days in February. His total gross pay for the school year had been $430.98. This figure was not shown to be inconsistent with that of other substitute drivers. As the school board's transportation supervisor testified, this was because "[s]ometimes you need them [substitute drivers] every day and sometimes you don't need them once a month or sometimes you don't even need them that often. It's according to if you got people out sick."
In addition to his job as a substitute school bus driver, which everyone referred to at the hearing as a "part-time" job, claimant had for many years had his own television repair business, which he considered his principal employment. At the hearing, claimant's counsel agreed that the television repair business was not relevant to the determination of claimant's average weekly wage because of section 440.02(24), Florida Statutes (Supp. 1990), which reads: "`Wages' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury and includes only the wages earned on the job where the employee is injured and does not include wages from outside or concurrent employment ..." (emphasis added).
The parties and the judge of compensation claims recognized that none of the alternative methods for computing average weekly wage set out in section 440.14 really applied to the facts of claimant's employment as a substitute school bus driver. Claimant argued that, because he had not worked "during substantially the whole of 13 weeks immediately preceding the injury," the method set out in section 440.14(1)(a) could not be used. There were no "similar employees"; therefore, section 440.14(1)(b) could not be used. Claimant was not a "seasonal worker," so section 440.14(1)(c) could not be used. He argued that, because he had worked only four weeks out of the thirteen preceding his accident, the average of those four weeks should be his average weekly wage.
The employer and servicing agent responded that, coincidentally, virtually all of claimant's work for the school year had been performed during the four weeks preceding his injury. Therefore, using the average of those four weeks would result in a considerable windfall to claimant. They argued, instead, that the average weekly wage would much more nearly reflect claimant's actual wage-earning experience if it were based upon the thirteen weeks preceding his injury, notwithstanding the fact that he had only worked during four of those weeks. The judge of compensation claims accepted that argument, and found that claimant's average weekly wage (based upon the thirteen weeks preceding the accident) was $31.16. It is from this determination that claimant appeals.
We agree that none of the alternative methods set out in section 440.14 for determining average weekly wage adequately covers claimant's employment as a substitute school bus driver. Clearly, as to that job, claimant "was a part-time worker at the time of the injury, ... had adopted part-time employment as his customary practice ... and ... under normal working conditions ... probably would have remained a part-time worker during the period *517 of disability." Section 440.14(1)(f), Fla. Stat. (1989). Moreover, claimant's counsel agreed that, because of the definition of "wages" in section 440.02(24), claimant's concurrent employment in his television repair business was irrelevant. Thus, it would appear that section 440.14(1)(f), relating to part-time employment, would apply. However, that section provides no real guidance regarding the computation of claimant's average weekly wage.
We have previously noted that the "duty [of the judge of compensation claims] is to reasonably and fairly determine average weekly wage." Orange-Co of Florida v. Waldrop, 454 So.2d 724, 725 (Fla. 1st DCA 1984). In performing that task, the judge of compensation claims is "not a cipher or a calculating robot, but ... a judge of [the] claimant's unique employment situation." Florida Cast Stone v. Dehart, 418 So.2d 1271, 1272 (Fla. 1st DCA 1982).
In Silver Springs, Inc. v. Scardo, 408 So.2d 844 (Fla. 1st DCA 1982), we recognized that section 440.14(1)(f) did "not direct the [judge of compensation claims] to consider part-time status in any particular manner." Id. at 845. We recognized, further, that "the part-time worker provision was not added to displace the basic preferred methods of calculating a wage base, but for the rather obvious purpose of preventing a part-time worker from collecting compensation based on the wages of a full-time worker." Id. Accordingly, we concluded that "the only meaningful interpretation of [section 440.14(1)(f)] is that it should modify the application of each of the basic compensation methods described in [s]ection 440.14(1)(a)-(d)." Id.
Had the judge of compensation claims adopted the approach urged by claimant and used the average of only the four weeks immediately preceding claimant's injury, the resulting average weekly wage would have been $101.22, despite the fact that, for the entire school year (twenty-four weeks) preceding claimant's injury, claimant's total gross wages had been only $430.98. Clearly, such a windfall is not contemplated by the statute. Given the unusual nature of claimant's employment as a substitute school bus driver, we believe that the method of computing claimant's average weekly wage applied by the judge of compensation claims was fair and reasonable to all parties; and that it does not conflict with legislative intent, as expressed in section 440.14. Accordingly, we affirm.
AFFIRMED.
ZEHMER, C.J., concurs.
ERVIN, J., dissents with written opinion.
ERVIN, Judge, dissenting.
In my opinion, the judge of compensation claims (JCC) erred by using a 13-week divisor to calculate claimant's average weekly wage (AWW). The 13-week method provided in Section 440.14(1)(a), Florida Statutes (1989), was obviously inapplicable, because the employee had not worked "substantially the whole of 13 weeks immediately preceding the injury." See also Gruber v. Budd Severino Gutters & Siding, 613 So.2d 1353 (Fla. 1st DCA 1993). Moreover, the JCC erred by including the nine weeks that claimant received no wages in the AWW calculation. I find no statutory authorization permitting the computation of an employee's part-time AWW based upon weeks when claimant was not needed or called to work and, therefore, was paid no wages.
I agree with the majority that the appropriate statutory method for determining claimant's AWW is section 440.14(1)(f), relating to part-time employment. I agree also that subsection (1)(f) fails to provide any guidance regarding the computation of the claimant's AWW. Nevertheless, I cannot accept the majority's conclusion that the calculation the JCC used is consistent with legislative intent.
In my judgment, the general, statutory language of subsection (1)(f) must be considered in pari materia with other provisions of Chapter 440, Florida Statutes, relating to an employee's wages and the calculation of disability. Section 440.02(13)(a), Florida Statutes (Supp. 1990), defines "employee" as "every person engaged in any *518 employment under any appointment or contract of hire or apprenticeship." (Emphasis added.) Section 440.02(24), Florida Statutes (Supp. 1990), defines "wages" as "the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury and includes only the wages earned on the job where the employee is injured." (Emphasis added.) (Footnote omitted.) Section 440.15(3)(b)(1), Florida Statutes (Supp. 1990), pertaining to a worker's entitlement to wage-loss benefits, provides that "[s]uch benefits shall be based on actual wage loss and shall not be subject to the minimum compensation rate set forth in s. 440.12(2)." (Emphasis added.) Subsection (3)(b)(2) states: "The amount determined to be the salary, wages, and other remunerations the employee is able to earn after reaching the date of maximum medical improvement shall in no case be less than the sum actually being earned by the employee... ." (Emphasis added.) The latter provision is repeated in subsection (4)(a), concerning an employee's entitlement to temporary partial disability benefits. Taken together, these provisions support the position that the AWW should be calculated only upon actual wages received by the claimant.
Substantial case law provides that a worker's AWW can be computed based on either his or her actual earnings at the time of injury or the contract of employment. See Penuel v. Central Crane Serv., 232 So.2d 739 (Fla. 1970); Greater Fla. Outdoor Advertising v. Dichristina, 591 So.2d 1090 (Fla. 1st DCA 1992); Adart S. Polybag Mfg., Inc. v. Goldberg, 495 So.2d 826 (Fla. 1st DCA 1986); Newell v. Seaboard Contractors, 473 So.2d 787 (Fla. 1st DCA 1985). In the case at bar, claimant's contract of employment did not require that he be paid a specific amount of wages, as occurred in Adart South Polybag Mfg., Inc. v. Goldberg. Hence, the only proper means of ascertaining claimant's AWW was by using the actual earnings claimant received during the entire contract period before the date of injury.
The claimant in the present case was under a one-year employment contract, employed as a substitute bus driver on an "as needed" basis. During nine out of the thirteen weeks which the JCC used to calculate the AWW, the claimant received no wages. Because he was not then needed, he was free to do as he wished: fish, hunt, or work in his television repair shop. He was not subject in any way to the direction of the employer. In effect, when he was not called, he had no employment relationship with the employer. Therefore, the JCC should have calculated claimant's AWW based only upon the actual wages he received during the contract year, without factoring in the weeks he did not work.
My conclusion in this regard is supported by two out-of-state cases. In Osmundson v. Sedan Floral, Inc., 697 P.2d 85 (Kan. Ct. App. 1985), the court rejected the employer's argument that claimant's AWW should be calculated, pursuant to the Kansas statute, based upon the entire 26-week period before the claimant's industrial accident,[1] when he did not actually work or receive wages during a substantial number of those weeks. In deciding that only the weeks in which claimant was actually employed could properly be included in determining his AWW, the court construed the applicable statute to mean that the term "employed" meant
the time the worker is employed and on the job. It does not intend for the average weekly wage computation to include time during which a worker is entitled to draw unemployment compensation and is free to seek and accept other employment until work is again available from the regular employer.
Id. at 88.
A similar result was reached in Smith v. Industrial Comm'n, 525 N.E.2d 81 (Ill.Ct. App. 1988), in which an Illinois appellate court decided that the Industrial Commission had correctly rejected the arbitrator's determination of claimant's AWW wherein *519 the total amount of wages the claimant earned for one year preceding the industrial accident was divided by 52 weeks. The court concluded that the Commission had correctly recomputed the claimant's AWW by dividing the total amount of wages claimant earned from September 10, 1984 (the date claimant was rehired by the employer) through October 16, 1984, the date of the accident, by 5 1/7 weeks, thereby resulting in a much higher AWW. Relying upon the applicable language of the pertinent Illinois statute, the court stated: "When employment is neither short nor casual, the employee's average weekly wage is to be determined on the basis of the number of weeks actually worked during the relevant time period." Id. at 84 (emphasis added).
Similarly, in the case at bar, the claimant's AWW should be determined solely on the basis of the number of weeks he actually worked during the term of his contract. This method, I consider, is the only means consistent with the legislative purpose of defining an employee's wages as the money rate for which the worker is recompensed under the contract of hire at the time of injury. If the legislature had intended a different result, it could have so stated in plain and unambiguous terms. For example, Arkansas has enacted a statute permitting injured part-time, temporary employees to be paid at the minimum rate of $15 per week during their disability. See Travelers Ins. Co. v. Perry, 557 S.W.2d 200 (Ark. 1977). Yet, there is no similar provision under Florida's Workers' Compensation Act.[2]
The majority states that if the JCC had used a method for calculating the claimant's AWW based upon the actual wages he received, claimant would have received a windfall. In my judgment, whether the result of computing claimant's AWW based solely upon wages actually earned is a windfall is simply an immaterial consideration under the circumstances. In rejecting an argument similar to that the employer made in the present case, the Court of Appeals of Kansas in Osmundson made the following salient observations:
This court is to determine legislative intent and nothing more; it cannot nullify legislative will nor concern itself with the wisdom of legislative policy. What we might consider fair and equitable under the circumstances is immaterial. In construing the Workmen's Compensation Act, the general rules of statutory construction are our guideline. We are instructed to broadly interpret the statute to achieve the purpose of the act and carry out legislative intent.
Osmundson, 697 P.2d at 87 (citations omitted).
Similarly, in the case at bar, our purpose is simply to determine legislative intent, and not what we might consider to be a fair and equitable result to both parties. Because there is no provision in Chapter 440, Florida Statutes, which authorizes the computation of a worker's AWW by the inclusion of weeks during which the employee received no wages, I conclude that the JCC erred by including the same in arriving at his AWW amount.
I would reverse the JCC's calculation of claimant's AWW, and remand with directions for him to determine the AWW by dividing the total sum of wages claimant received during the 1990-91 school year by the number of weeks during which claimant actually received compensation, and exclude therefrom those weeks which claimant did not work and therefore received no wages.
NOTES
[1] Section 44-511(b)(5), Kansas Statutes Annotated (Supp. 1984), provides that a worker's AWW shall be computed by dividing the total amount of wages received either by 26 weeks preceding the accident or by the number of weeks "so employed."
[2] Section 440.12(2), Florida Statutes (1989), does provide that compensation for disability for injuries occurring after December 31, 1974 shall not be less than $20 per week, but if the worker's wages are less than such amount, his or her compensation shall be based upon the full amount of the wages received. This provision, does not, however, set out a minimum sum to be paid to the employee in the event the worker is engaged in part-time, temporary employment in situations wherein he or she receives sums in excess of the weekly, minimum amount, as in the case at bar.