No. 69,238

DAVID WAYNE ELDER, Deceased, *Claimant-Appellant*, v. ARMA MOBILE TRANSIT CO. and PARKVIEW HOUSING, INC., *Respondents-Appellees*, and AETNA CASUALTY & SURETY COMPANY, *Insurance Carrier-Appellee*.

(861 P.2d 822)

Opinion filed October 29, 1993.

*Timothy A. Short,* of Spigarelli, McLane & Short, of Pittsburg, argued the cause and was on the brief for appellant.

*Michael T. Harris,* of Hershberger, Patterson, Jones & Roth, L.C., of Wichita, argued the cause, and *Tamara L. Davis,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: David Wayne Elder, an employee covered by workers compensation, was fatally injured. On appeal only the calculation of the average weekly wage is at issue. The Administrative Law Judge (ALJ), the Director of Workers Compensation (Director), and the district court found that K.S.A. 1992 Supp.

44-511(b)(5) requires the weeks an employee could have worked but did not work or earn any wages be included when averaging the employee's earnings over the 26-week period prior to the accident. Elder's dependents (claimants) appeal, asserting (1) the statute excludes from the computation of Elder's average weekly wage the eight weeks when he did not work or was on "vacation" or "leave of absence", and (2) the trial court erred in averaging Elder's wages over the entire 26 weeks prior to his fatal injury.

Elder was fatally injured in a motor vehicle accident while delivering a mobile home for his employer. Claimants filed workers compensation claims against his immediate employer, Norman Girard, d/b/a/ Arma Mobile Transit Company (Arma), and his statutory employer, Parkview Housing, Inc. (Parkview). The Kansas Workers Compensation Fund (Fund) was impled because Arma was uninsured and unable to pay workers compensation benefits.

After discovery was completed, claimants elected to proceed against Parkview and its insurer, AETNA Casualty and Surety Company (AETNA), rather than against Arma and the Fund. See K.S.A. 44-503. Parkview stipulated that Elder was a statutory employee whose fatal injury arose out of and in the course of his employment, leaving only the amount of the average weekly wage as an issue between claimants and Parkview. The evidence was undisputed that Elder earned a total of $5,140.86 in wages during 18 of the 26 weeks prior to the accident. Although Elder had not worked or earned any wages during the other 8 weeks, Parkview asserted those weeks should be included when determining the deceased's average weekly wage. The claimants disagreed.

The ALJ found that the deceased worker was employed by Arma "on a cash basis and could work or not work as he saw fit." Applying the findings of *Osmundson v. Sedan Floral, Inc.,* 10 Kan. App. 2d 261, 697 P.2d 85 (1985), to the facts of this case, the ALJ determined that "the eight weeks that Claimant did not work but could have if he wanted" should be included in the computation of the deceased employee's average weekly wage. The ALJ entered an award in favor of claimants under K.S.A. 1992 Supp. 44-510b by averaging Elder's wages over the 26 weeks prior to his fatal injury. The ALJ determined Elder's average weekly wage to be $197.73. The claimants appealed.

The Director affirmed the award entered by the ALJ. The claimants and Arma both filed petitions for judicial review with the district court. The district court affirmed the ALJ as to Elder's average weekly wage, finding that the testimony was clear that "[Elder] worked for Respondent, Arma Mobile Transit, on a cash basis and could work or not work as he saw fit." The district court, applying the reasoning of *Osmundson,* found that "the eight weeks that the deceased worker did not work but could have if he wanted" should be included in the computation of the deceased's average weekly wage. The court determined the amount of Elder's average weekly wage under K.S.A. 1992 Supp. 44-511(b)(5) by averaging his earnings over the 26-week period prior to his accident.

If there is substantial evidence to support the district court's factual findings, the appellate court has no power to weigh evidence or reverse the final order of the district court. *Baxter v. L. T. Walls Constr. Co.,* 241 Kan. 588, 591, 738 P.2d 445 (1987). The question of whether a district court's judgment is supported by substantial evidence is one of law, and if there is substantial evidence to support those findings, this court is bound by such findings. *Duncan v. City of Osage City,* 13 Kan. App. 2d 364, 366, 770 P.2d 843, *rev. denied* 245 Kan. 783 (1989).

Findings in a workers compensation case which are supported by substantial competent evidence will be upheld by the court on appellate review even though there is evidence of record which, if given credence by the trial court, would have supported contrary findings. *Monroe v. General Motors Corp.,* 13 Kan. App. 2d 460, Syl. ¶ 4, 773 P.2d 683, *rev. denied* 245 Kan. 785 (1989). Although there is conflicting evidence which would support a contrary finding, there is substantial competent evidence to support the findings of the ALJ and the district court.

Does K.S.A. 1992 Supp. 44-511(b)(5) require that the eight weeks when the deceased worker did not work be excluded from the computation of his average weekly wage? The scope of review in a workers compensation appeal is that applicable in other civil cases. K.S.A. 1992 Supp. 44-556(a); K.S.A. 77-623. Where the ALJ and the Director have made computations of the average weekly wage of a worker, which have been approved by the district court, such computations are binding upon an appellate

court if supported by competent evidence. *Myers v. Worth Oil-field Service,* 185 Kan. 72, 340 P.2d 368 (1959). An appellate court may substitute its judgment on questions of law, but on disputed issues of fact, the appellate court must view the evidence in the light most favorable to the prevailing party and determine whether there is substantial competent evidence to support the findings of the trial court. *Reeves v. Equipment Service Industries, Inc.,* 245 Kan. 165, 173, 777 P.2d 765 (1989).

The parties agree that the wages of the worker were based upon his output, rather than upon a set hourly or weekly rate of pay. Therefore, his average weekly wage was to be determined in accordance with K.S.A. 1992 Supp. 44-511(b)(5), which provides:

"(5) If at the time of the accident the money rate is fixed by the output of the employee, on a commission . . . basis, . . . and if the employee has been employed by the employer at least one calendar week immediately preceding the date of the accident, the average gross weekly wage shall be the gross amount of money earned during the number of calendar weeks so employed, up to a maximum of 26 calendar weeks immediately preceding the date of the accident, divided by the number of weeks employed, or by 26 as the case may be . . . . In making any computations under this paragraph (5), workweeks during which the employee was on vacation, leave of absence, sick leave or was absent the entire workweek because of illness or injury shall not be considered."

Claimants contend the statute requires that the eight weeks when the deceased employee did not work be excluded from the computation of his average weekly wage. Claimants initially argue that 44-511(b)(5) requires that any week when the worker is absent the entire week and performs no work, regardless of the reason for his or her absence, shall not be considered in the computation of average weekly wage. This particular argument is without merit. The statute clearly states that for the exclusion to apply, the absence must be due to vacation, leave of absence, sick leave, illness, or injury.

Claimants then argue that the *Osmundson* case supports their position and that the ALJ and the district court misapplied that case in reaching their decision. In *Osmundson,* claimant's work was of a seasonal nature. Claimant had worked 11 of the preceding 26 weeks. During the 26-week period, work was not available to claimant for 13 of 14 consecutive weeks. Claimant was eligible

for and was paid unemployment compensation when he was not working for respondent. The ALJ divided the amount earned by 11 weeks to arrive at an average weekly wage. The employer appealed. The trial judge divided the amount the employee had earned by 26 weeks. The employee appealed. The Court of Appeals reversed the trial court and affirmed the ALJ.

In reaching its decision, the Court of Appeals in *Osmundson* noted that although 44-511(b)(5) does not define the term "employed," the term had to be construed by courts, not in a strict sense, but in a manner that would accomplish the purpose of the Workers Compensation Act and be consistent with legislative intent. It pointed out that what is now K.S.A. 1992 Supp. 44-703(m) of the Employment Security Law statutes, defines "unemployment" by stating that "[a]n individual shall be deemed 'unemployed' with respect to any week during which such individual performs no services and with respect to which no wages are payable to such individual." It observed that in *Zeitner v. Floair, Inc.,* 211 Kan. 19, 24, 505 P.2d 661 (1973), we stated that "employed" means actually employed and on the job and that it is not the day of hiring that controls; we construed 44-511(b)(5) to reflect the legislative intent that the word "employed" means the time the worker is employed and on the job. 10 Kan. App. 2d at 264.

The *Osmundson* court concluded that the legislature when enacting 44-511(b)(5) did not intend for the average weekly wage computation to include time during which a worker is entitled to draw unemployment compensation and is free to seek and accept other employment until work is again available from the regular employer. The *Osmundson* court found that the trial court should not have included the weeks when no work was available to claimant. It reasoned that the determining factor is that the worker is not employed because there is no work available for him or her to perform. 10 Kan. App. 2d at 265.

In support of their argument, claimants point out the language of the syllabus of *Osmundson,* 10 Kan. App. 2d 261:

"A worker's average weekly wage computed pursuant to K.S.A. 44-511(b)(5) includes weeks the worker is employed and on the job; it does not include any weeks that the worker is unemployed because the employer has no work available for the worker to perform."

Claimants assert that because the ALJ and the district court focused on the negative implication of the final phrase in the paragraph, they erroneously concluded that only those weeks where the worker did not work because there was "no work available" are to be excluded in the computation of the worker's average weekly wage. Claimants state that when interpreting 44-511(b)(5), the focus must be upon the affirmative statement in the initial part of the sentence that only those weeks when the worker is "employed and on the job" are to be used in the wage computations.

Claimants point out the language of 44-511(b)(5), adopted in 1974, is identical to the language of the previous statute, except for the use of the term "employed" instead of "actually employed." The claimants note that the Court of Appeals held in *Osmundson* that the deletion of the word "actually" from K.S.A. 44-511(2) (Weeks) was merely because it was redundant and did not reflect a legislative intent to change the meaning of the statute. See 10 Kan. App. 2d at 264.

Claimant then observes that in deciding *Osmundson* the Court of Appeals cited *Zeitner v. Floair, Inc.,* 211 Kan. 19, Syl. ¶ 1, which held that the term "actual employment" meant the time the worker was actually employed and on the job. Also, claimants note the Court of Appeals' reference to 44-703(m), which defines "unemployment" by stating that "[a]n individual shall be deemed 'unemployed' with respect to any week during which such individual *performs no services and with respect to which no wages are payable* to such individual." (Emphasis added.) Claimants conclude the legislature's enactment of 44-703(m) shows the intent of the legislature when enacting 44-511(b)(5).

Parkview and AETNA assert that *Osmundson* holds that the only weeks which are to be excluded are those in which the employee did not work because the employer had no work for him. They point out this case can be distinguished from *Osmundson,* where there was no work available for the employee for some weeks, in contrast to the ALJ finding in the present case that the deceased employee did not work during the 8 weeks, but could have worked if he wanted because there was work available for him.

We agree that *Osmundson* can be distinguished from this case. *Osmundson* dealt with seasonal employment and whether the time claimant was paid unemployment compensation when he had no work available should be included in the number of weeks to be used as the divisor in determining average weekly wage. Here, the finding of the ALJ and the district court were that the worker was employed and there was work available. The deceased worker's employment was not seasonal, nor was the worker entitled to unemployment compensation. Because of the factual difference of the two cases, the reasoning of *Osmundson* does not apply in the present case. .

Was the deceased worker on "vacation" or "leave of absence"? Claimants point out that neither the ALJ nor the district court addressed the final sentence of K.S.A. 1992 Supp. 44-511(b)(5), which provides: ·

"In making any computations under this paragraph (5), workweeks during which the employee was on vacation, leave of absence, sick leave or was absent the entire workweek because of illness or injury shall not be considered."

Parkview and AETNA respond that the employee worked only when and if he wanted to; therefore, claimants' assertion that the employee was on a leave of absence or vacation is utterly unsupported by the record or by common sense.

Claimants observe the Workers Compensation Act does not define "leave of absence" or "vacation." They then argue that whenever a worker is temporarily absent from work, with the consent of his or her employer, for an entire week and earns no wages during that week, the worker must be considered to be either on a "vacation" or a "leave of absence" under 44-511(b)(5). Although claimants cite no authority in support of this conclusion, we agree.

In *Goodyear Tire & Rubber Co. v. Employment Security Board of Review,* 205 Kan. 279, 469 P.2d. 263 (1970), under the provisions of a collective bargaining agreement between the company and claimants' union, Goodyear had effected a partial shutdown of its plant for vacation purposes for a two-week period. Under the terms of the collective bargaining agreement, employees were not required to take their vacations during the shutdown period but could take them at other times during the year or could defer

them until the following year, at the employees' option. The employees claimed they were entitled to unemployment benefits during the period the plant was shut down if they had elected to take their vacation during some other period of time.

On appeal, this court noted that the agreement was not one to waive rights to benefits which an employee otherwise would be entitled; rather, under the contract the employees agreed to a voluntary absence from work if they chose to exercise that right. This court found such an agreement could not be interpreted as an agreement to waive, release, or commute benefits as prohibited by the Employment Security Act. This court then defined two terms, "layoff" and "leave of absence". 205 Kan. at 285.

"A 'layoff' is looked on as at least a suspension of employment, and in some instances as termination thereof, at the will of the employer without prejudice to the worker being reemployed. [Citation omitted.] Certainly it implies no element of voluntariness on the part of the employee. In those situations where an employee is considered on "layoff" under the terms of the bargaining agreement, he is involuntarily unemployed if no work is made available to him.

" 'Leave of absence' is not a complete separation from employment, although it implies some voluntary act on the part of the employee. It denotes a continuity of the employment status—a temporary absence from duty, with intention to return—during which time performance of the duties of his work by the employee and remuneration by the employer are suspended. [Citations omitted.]" 205 Kan. at 285.

There is substantial competent evidence to support the findings that the deceased was employed and work was available, but that with the approval of his employer, he did not work—he was on a leave of absence. The determination by the ALJ and the district court that the eight weeks should be included is reversed. This matter is remanded for further proceedings.

Reversed and remanded.