657 So.2d 1266 (1995)
James JACKSON, Appellant,
v.
HOCHADEL ROOFING COMPANY and Claims Center, Appellees.
No. 93-3396.
District Court of Appeal of Florida, First District.
July 13, 1995.
*1267 James A. Sheehan of James A. Sheehan, P.A., St. Petersburg, for appellant.
Robert W. Glass of Matusek, McKnight, Poluse & Cangro, P.A., St. Petersburg, for appellees.
DAVIS, Judge.
James Jackson has appealed the calculation of his average weekly wage. His injuries were incurred in the course and scope of his employment, and the only dispute below concerned the correct calculation of his average weekly wage (AWW). There is competent substantial evidence to support the JCC's determination of a fair and reasonable average weekly wage, and accordingly, we affirm.
The appellant agrees that the Judge of Compensation Claims (JCC) was correct in utilizing section 440.14(1)(d), Florida Statutes, rather than the thirteen week formula in subsection (a). There was competent substantial evidence to support the conclusion that Mr. Jackson did not work substantially the whole of the thirteen weeks preceding his injury because the business was closed down for two weeks during which it was customarily open in other years. See, e.g., Spartan Electronics v. Russell, 513 So.2d 153 (Fla. 1st DCA 1987) (deputy commissioner correctly determined AWW under section 440.14(1)(d) by using the eleven weeks preceding the injury, when the thirteen week period specified by subsection (a) was inapplicable because the employee was laid off or the plant was closed for two of those thirteen weeks).
Mr. Jackson asserts, however, that the JCC erred in the manner of calculating his AWW under section 440.14(1)(d). First, Mr. Jackson asserts that his AWW should have been calculated based upon a contract for hire at $11 an hour for a forty hour week. While there was competent substantial evidence to support the claim that there was a contract for hire at $11 an hour for a forty hour week, this contention must fail because there is also competent substantial evidence to support the determination of the JCC that claimant did not have a contract for hire entitling him to forty hours a week of work or pay, including the testimony of both Mr. Jackson and his employer. See Greater Florida Outdoor Advertising v. Dichristina, 591 So.2d 1090 (Fla. 1st DCA 1992) ("The pertinent figure for a contracted salary is the amount which the claimant is legally entitled to earn."). When there is no contractual provision governing the number of hours the claimant will work per week, the JCC must calculate the AWW based upon the actual wages earned. See Orange-Co of Florida v. Waldrop, 454 So.2d 724, 725 (Fla. 1st DCA 1984); see also Waldorf v. Jefferson County School Bd., 622 So.2d 515 (Fla. 1st DCA 1993) (calculating fair and reasonable AWW for part-time substitute bus driver which accounted for the small number of hours he worked); Alterman Transport Lines v. Rust, 547 So.2d 337 (Fla. 1st DCA 1989) (JCC must look to the customary full time hours of employment in the particular case to determine whether the claimant had worked substantially the whole of the thirteen weeks preceding the injury). The JCC did not err in determining that the facts of this case required her to calculate AWW based upon this claimant's actual wages rather than upon a contract for hire. Bruck v. Glen Johnson, Inc., 418 So.2d 1209, 1211 (Fla. 1st DCA 1982).
Next, Mr. Jackson asserts that the JCC failed to compute a fair and reasonable AWW under this method because the weeks used to compute the AWW were a slack time. The JCC calculated the AWW based upon the actual wages as indicated in a wage statement provided by the employer, which statement showed the wages earned over a fourteen week period preceding the claimant's injury, but omitted one week in which there were no earnings from the calculation of the average.
The JCC has broad discretion in determining a fair and reasonable calculation of average weekly wage under section 440.14(1)(d). See, e.g., Mayflower Corp. v. Wilma O. Davis, 655 So.2d 1134 (Fla. 1st DCA 1994); Spartan Electronics v. Russell, 513 So.2d 153 (Fla. 1st DCA 1987) (deputy commissioner correctly determined AWW under section 440.14(1)(d) by using the eleven weeks preceding the injury, when the *1268 thirteen week period specified by subsection (a) was inapplicable because the employee was laid off or the plant was closed for two of those thirteen weeks); Bruck v. Glen Johnson, Inc., 418 So.2d 1209 (Fla. 1st DCA 1982) (calculating AWW based upon actual wages pursuant to subsection (d) utilizing the three days preceding the accident); Florida Cast Stone v. Dehart, 418 So.2d 1271 (Fla. 1st DCA 1982) (calculating fair and reasonable AWW based upon actual wages pursuant to subsection (d) utilizing the five weeks preceding the injury and exercising discretion to exclude two earlier weeks in which the claimant had lower earnings). In this case the JCC made a determination based upon the only evidence which was presented to the court, and the resulting calculation of AWW is based upon competent substantial evidence in the record. Therefore, we conclude that the JCC appropriately exercised her discretion in determining what was a fair and reasonable AWW. See, e.g., Waldorf v. Jefferson County School Bd., 622 So.2d 515 (Fla. 1st DCA 1993) (JCC did not err under the facts in this case in taking earnings from the four weeks preceding the injury and dividing by thirteen to calculate the AWW). The burden was on the claimant to produce evidence of the correct AWW. Linderman v. Kirkland's Restaurant, 127 So.2d 888, 889 (Fla. 1961); Western Auto v. Moore, 567 So.2d 972, 974 (Fla. 1st DCA 1990). In this case, the claimant produced no evidence of his actual wages at any time, and the only evidence upon which the JCC could rely in calculating Mr. Jackson's average weekly wage based upon his actual wages were the wage statements provided by the employer. Accordingly, the order of the Judge of Compensation Claims is AFFIRMED.
ALLEN, J., concurs.
WENTWORTH, Senior Judge, dissents with written opinion.
WENTWORTH, Senior Judge, dissenting.
The order in this case effectively bases compensation on a full-time work week of less than 25 hours, giving conclusive effect to a 14-week wage statement showing earnings for those average weekly hours at a stated $11.00 hourly rate. Employer's testimony, however, was that his business had been "real bad" the last year or so. Both he and claimant testified repeatedly, in the context of their 13-year employment history, that a normal and customary workweek was 40 hours.[1] These circumstances presented a classic illustration of a well-established principle under average weekly wage provisions similar to those in our statute: If an employer or industry "is on a three-day week because of business conditions, this does not mean that claimant's probable future earning capacity is cut in half...." Larson's Workmen's Compensation Law, Vol. 2, Sec. 60.22(b), 10-722.[2] The order does not in *1269 terms state a contrary conclusion, and I am unwilling to affirm a result necessarily based on such an implicit holding. I would agree with the order only so far as it finds that a full-time weekly wage in this case must be determined under Sec. 440.14(1)(d), F.S., from record evidence of actual earnings, including the wage statement and testimony. No claim was made that claimant had adopted part-time employment as his customary practice.
The appellant/claimant does not assert in this court that he proved a contract for a forty hour week, which the JCC correctly found he did not prove. He asserts in substance that the 14-week wage statement in this record showed a short workweek expressly attributed to bad business conditions by employer's testimony. The statement therefore established only the rate and regularity of his wages. It can properly form the basis of a full-time weekly wage under the statute only in conjunction with the unrefuted testimony from both employer and employee that a 40-hour workweek had been normal and customary for claimant. The judge of compensation claims (JCC) appears to have been led into error by the failure of either party to argue a complete and correct application of Section 440.14, F.S., to the uncontroverted evidence presented. I would reverse based on the appellant/claimant's consistent argument below and here that the wage statement of actual earnings, in the evidentiary context, did not permit the JCC's determination of the average weekly wage by simply dividing the total number of weeks worked into the wages paid. See Orange-Co of Florida v. Waldrop, 454 So.2d 724 (Fla. 1st DCA 1984).[3]
The statutory language which must be applied here is the mandate of Sec. 440.14(1)(d), F.S.,[4] to determine "the full-time weekly wages" (emphasis supplied) prospectively based on fair and reasonable evaluation of actual earnings. The wage statement in this case shows payment for weekly hours ranging from 14 1/2 to 41 1/2 hours at an hourly rate of $11.00. It evidences an average workweek of approximately 3 1/2 days.[5] The shortened *1270 workweek was explained solely by the single employer response to inquiry at the hearing, stating that business had been "real bad" the past year.
The order on appeal finds "earnings of the claimant for the thirteen week period ... totals $3,952.50." The statement in fact shows earnings of only $3,712.50 because it shows no work hours for the Christmas week when employer closed operations. A $240.00 payment for that week was identified by employer and claimant as a gift, non-customary in character. Although the point is insignificant in impact, the correct use of the wage statement in the circumstances would be to limit consideration to the weeks worked. Spartan Electronics v. Russell, 513 So.2d 153 (Fla. 1st DCA 1987). Cf. Waldorf v. Jefferson County School Bd., 622 So.2d 515 (Fla. 1st DCA 1993), for part-time employment.[6]
The variety and number of decisions under this statute plainly recognize that, in determining the prospective full-time weekly wage from actual earnings, the JCC is "not a cipher or a calculating robot, but ... a judge of claimant's unique employment situation."[7] But the order in this case simply states without explanation that "The earnings ... divided by 13 [weeks] equals $304.03 and this amount is the fair and reasonable full-time actual weekly wage that the claimant was paid, and it also reflects the reasonable amount to which the claimant was entitled to be paid." This conclusion is in terms nothing more than the division of the number of weeks worked into the wages paid, contrary to the admonition of the opinion in Orange-Co, supra. That opinion referenced Bruck v. Glen Johnson, Inc., 418 So.2d 1209 (Fla. 1st DCA 1982), to indicate a correct use of actual earnings on a wage statement to fix a prospective full-time weekly wage. In that case, as here, part-time status was not determined or argued, and no contract for a specific workweek was shown. This court, based on a wage statement, reversed an AWW for a new employee. The opinion required wage calculation from the wage statement showing "that claimant worked and was paid for 27 hours in the three days immediately preceding his accident, for a projected total of 45 hours per week." (Emphasis supplied). 418 So.2d at 1211. The court reasoned that the three 9-hour days' wages shown on the statement required a projection into a five-day work week in order to achieve a full-time weekly wage under Sec. 440.14(1)(d), F.S. Remand was accordingly made for an AWW based on a work week of 45 hours at the agreed hourly wage.
I would find that the record in the present case requires a similar projection of full-time weekly wages from past actual earnings shown on the wage statement. Claimant's actual earnings of $3,712.50 for the 12 weeks when he had earnings should, consistent with the above rationale, result in a wage of $309.37 weekly while claimant worked an average of 3 1/2 8-hour days per week. Projected to a 5-day week (there being no finding or evidence of an established work week of less than the 5 days normal and customary week claimed by both parties), the AWW would be $442.00. A proper use of the wage statement would accordingly result in an AWW equivalent to the $440.00 sought by claimant on the basis of a "normal" 40 hour work week at his $11.00 hourly uncontroverted rate.
I recognize that such a projection from averaged actual earnings would by no means be universally required in prospective determination of AWW under Sec. 440.14(1)(d). But I find nothing in the order or record here supporting any alternative method of fair and reasonable prospective determination of AWW, consistent with the JCC's stated conclusion that the statutory "full-time weekly wages" must in this case be based on actual earnings. I would reverse with directions *1271 for disposition of the claim accordingly.
NOTES
[1] The claimant (a middle-aged illiterate roofer) testified from recollection of his long employment that a 40 hour week was "normal" and "customary" and "that was the practice," with a 7 to 3:30 work day, and overtime when weekly hours exceed 40. The order does not expressly find his testimony to be incredible or insufficient to carry his prima facie burden, and the record reflects general employer corroboration. Accord Western Auto v. Moore, 567 So.2d 972, 974 (Fla. 1st DCA 1990), and O.T. Sims & Associates v. Merchant, 435 So.2d 884 (Fla. 1st DCA 1983), as to evidentiary competence.
[2] The Florida Supreme Court has so concluded in a case where employer failed to provide full-time work for claimant for the 13 weeks preceding injury:

Claimant admits that the year 1958 was a bad year for the awning business and his employment was affected thereby. The record reveals that the average weekly wage for this employee for the previous thirteen weeks prior to the accident was $22.25 per week whereas the deputy commissioner determined the average weekly wage to be $60.00 based on a full 40 hour week at $1.50 per hour making the rate of compensation $35.00 per week.
Miami Beach Awning Co. v. Socalis, 129 So.2d 414, 417 (Fla. 1961).
An early Georgia opinion similarly construes statutory "regular wage" language and explains the rationale:
Though an employee had for ten months before the accident worked only three days per week his "regular wage" was $5 per day, and ... is the basis upon which his compensation must be computed. To obtain a weekly basis the daily wage should be multiplied by six, the number of work days per week, rather than by three ... which is the number of days per week the employee had been working.
... .
There is nothing mystical about the workman's compensation law, and it calls for no unusual interpretations. The one high aim constituting the foundation of this law is compensation for an injured employee in proportion to his loss on account of the injury. That loss is deprivation of future earnings, and is measured by his proved earning capacity. It of necessity looks to the future. Under the statute authority is given to consider the past only in so far as it reveals a regular earning capacity... . Although this claimant was able to procure employment for only three days per week at the time of the accident, there was nothing in the employment contract or otherwise to limit his future to three days' employment per week... . But the insurance carrier says that the premiums received by it are calculated upon a basis of the total payroll, and that where the employment is for only half time its premium is likewise reduced, and hence it is not paid a premium that would authorize the payment of compensation on a basis of full time. Such argument overlooks the very simple fact that the insurer's liability is in force only during the time the employee is at work; and if he works only half time, then its risk is for only half time, and consequently its premiums based upon the payroll fully paid for full compensation... .
Carter v. Ocean Acc. & Guarantee Corp., 190 Ga. 857, 11 S.E.2d 16 (1940).
[3] That is the precise cautionary language in Orange-Co. v. Waldrop, reversing a wage based on an alleged contract for 40 hours weekly and remanding for recomputation of prospective full-time weekly wages based on actual earnings, stating:

... this does not mean the average weekly wage must be determined by simply dividing the total number of weeks worked immediately before the injury into the wages paid during that time. The deputy's duty is to reasonably and fairly determine average weekly wage.
[4] If any of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wages of the injured employee shall be used, except as otherwise provided in ... paragraph (f).
... .
(f) If it is established that the injured employee was a part-time worker at the time of the injury, that he had adopted part-time employment as his customary practice, and that under normal working conditions he probably would have remained a part-time worker during the period of disability, these factors shall be considered in arriving at his average weekly wages. For the purpose of this paragraph, the term "part-time worker" means an individual who customarily works less than the full-time hours or full-time workweek of a similar employee in the same employment.
[5] The $304.03 AWW stated in the order would represent, at the agreed $11.00 hourly wage, 3.45 days' work per week. Neither the statement, reflecting only weekly (and not daily) hours worked, nor any other evidence in the record would contradict the testimony as to normal and customary 8-hour workdays absent exceptional circumstances such as rain or lack of work.
[6] In Florida Cast Stone v. Dehart, 418 So.2d 1271 (Fla. 1st DCA 1982), this court approved the omission of weeks with zero or comparatively little earnings, in favor of five weeks of continuous but still not full weeks preceding injury.
[7] Id. at 1270.