307 So.2d 223 (1975)
Edward YARBOROUGH, As Executor of the Last Will and Testament of William G. Kilbee, Deceased, and Individually, Appellant,
v.
Raymond L. KILBEE, As Trustee under the Last Will and Testament of E. H. Kilbee, Deceased, and Individually, et al., Appellees.
Edward YARBOROUGH, As Executor of the Last Will and Testament of William G. Kilbee and Edward Yarborough, Individually, Appellant,
v.
Raymond L. KILBEE, etc., et al., Appellees.
Edward YARBOROUGH, As Executor of the Last Will and Testament of William G. Kilbee, Deceased, and Individually, Appellant,
v.
Raymond L. KILBEE, etc., et al., Appellees.
Nos. 73-864, 73-1231 and 74-411.
District Court of Appeal of Florida, Fourth District.
January 17, 1975.
Rehearing Denied February 20, 1975.
*224 Geo. A. Speer, Jr., of Speer & Speer, P.A., Sanford, and Monroe E. McDonald, of Sanders, McEwan, Mims & McDonald, Orlando, for appellant.
S. Lindsey Holland, Jr., of Crofton, Holland, Starling, Harris & Severs, P.A., Melbourne, and John J. Donnelly, Geneva, for appellees.
DOWNEY, Judge.
We have for review three consolidated appeals arising out of litigation which involves (a) the dissolution of a family cattle partnership and a division of the assets of the partnership, and (b) claims for a partition of real property and for the imposition of a trust.
In 1940 E.H. Kilbee and his oldest son, W.G. Kilbee, commenced a stock cattle partnership business. At that time the father had a herd of cattle branded "K" and marked Crop Upper Bit in each ear, while the son had a herd branded "K" and marked Swallow Fork Under Bit. The record is silent as to the number of cattle owned by each at the commencement of *225 the business or the terms upon which the cattle came into the partnersip. Both father and son owned substantial amounts of pasture land, some individually and some jointly, all of which was used by the partnership for grazing the herd in question.
The son operated the partnership business for a period of four years during which period the herd grew due to the purchase of cattle and natural reproduction within the herd. New born calves were given the same mark and brand borne by the mother, while newly purchased animals were generally marked Crop Upper Bit unless their ears would not take that mark, in which case they were marked Swallow Fork Under Bit. The proceeds from the sale of animals were put into the partnership account and new cattle were purchased with partnership funds.
E.H. Kilbee died in April 1944. Pursuant to his Last Will and Testament, which appointed his son, W.G. Kilbee, as executor and trustee, the partnership was continued just as it had been from its inception with the profits being divided equally between W.G. Kilbee individually and W.G. Kilbee, as executor and later as trustee, under the Last Will and Testament of E.H. Kilbee, deceased. In 1969 W.G. Kilbee died and appellant, Edward Yarborough, the sole beneficiary of W.G. Kilbee's estate, was appointed executor of said estate. Another son of E.H. Kilbee, R.L. Kilbee, was appointed successor trustee under the Last Will and Testament of E.H. Kilbee. Appellant as executor of the W.G. Kilbee estate, continued the business in the same fashion it had been conducted by his decedent, dividing the profit therefrom equally with R.L. Kilbee, as trustee of the E.H. Kilbee trust, until June 15, 1972.
The Upper Bit and Lower Bit brands and marks had been registered in the name of E.H. Kilbee and W.G. Kilbee, respectively. After the death of E.H. Kilbee the Upper Bit brand and mark was renewed in the names of the beneficiaries of the E.H. Kilbee trust.
After the death of W.G. Kilbee a controversy arose between appellant, as executor of the W.G. Kilbee estate, and the beneficiaries of the E.H. Kilbee trust. Accordingly, appellant filed suit for declaratory relief praying for a declaration as to the ownership of the herd of cattle involved in the partnership. Appellees answered and counterclaimed in three counts. Count I sought (a) to restrain appellant from any further sales or expenditures of partnership funds, (b) an accounting of partnership property, and (c) a declaration of ownership of the cattle in question. Count II sought an accounting of the proceeds of certain real property owned by the E.H. Kilbee trust and the impression of a trust on certain conveyances made by W.G. Kilbee, as trustee of that trust. Count III sought a partition of the realty jointly owned by the E.H. Kilbee trust and the estate of W.G. Kilbee.
Appellant voluntarily dismissed his complaint and the case went to trial only on Count I of the counterclaim, leaving the other counts for later determination. Since the judicial labor is clearly not ended even as to Count I, the appeal in # 73-864 is from an interlocutory order rather than from a final judgment.
In the judgment entered after a trial on Count I the trial judge found that E.H. Kilbee and his son, W.G. Kilbee, had "formed a cattle business and agreed upon a 50-50 division of the profits, but maintained their separate ownerships of cattle intact by marking and branding calves retained in the herd the same as their mother"; that this pattern was continued after the death of E.H. Kilbee, thus increasing the capital investment of each partner but maintaining the same capital ratio as existed at the inception of the partnership. From these facts the court inferred that it was the intention of the parties that all cattle marked Crop Upper Bit are owned by the E.H. Kilbee trust and the cattle marked Swallow Fork Under Bit belonged to the estate of W.G. Kilbee, deceased. The court further found that upon the *226 death of W.G. Kilbee in 1969, the partnership was dissolved by operation of law and the inventory of cattle made at that time was 1394 animals marked Upper Bit and 126 animals marked Under Bit; that since the parties could not agree on the distribution of the cattle, appellant continued to operate the business and payments of the proceeds to the parties were made without prejudice. The court then ordered that appellant be enjoined from any further sales or expenditures involving the partnership. It ordered further that a receiver be appointed and that he deliver to the trust all of the cattle marked Crop Upper Bit, and to appellant all cattle marked Swallow Fork Under Bit, and that all of the unmarked cattle in the herd be divided between the trust and appellant on the basis of eleven to one respectively. The receiver was also given authority to operate the business, including use of the pasture land, until the division could be made and the business wound up. Finally, the court appointed a special master to take an accounting of the business since the death of W.G. Kilbee and determine the amount due the trust based upon the proportion of Crop Upper Bit cattle reflected in the inventory as of that date. He was also to make recommendations regarding the distribution and sale of other partnership assets.
The focal point of this appeal is the validity of the trial court's conclusion from the evidence that the father, E.H. Kilbee, and the son, W.G. Kilbee, at the inception of the partnership, did not intend that their respective herds be a contribution to an equal partnership so that each partner would retain the ownership of all cattle marked with his respective brand and mark. As the court expressly stated in the judgment, that conclusion was based upon the pattern of marking and branding animals and the registration of said marks and brands throughout the years the partnership was operated. From our reading of this extensive record, and affording the trial judge's conclusion the presumption of correctness to which it is entitled, we are unable to agree.
In the search to determine what the parties intended when they commenced their business arrangement we find the record is silent as to the number of cattle in the respective herds of father and son in 1940. The closest the record comes to establishing that count is the testimony of one Nolan Fore who estimated the size of the partnership herd at the time of E.H. Kilbee's death in 1944 to have been "around a thousand to eleven hundred head" with the Crop Upper Bit cattle outnumbering the Swallow Fork Under Bit cattle ten to one. The evidence shows that E.H. Kilbee was the registered owner of the brand "K", Crop Upper Bit, and that W.G. Kilbee was the registered owner of the brand "K", Swallow Fork Under Bit; that a number of years after the the death of E.H. Kilbee in 1966, W.G. Kilbee, as trustee, applied for a renewal of said brand with the Department of Agriculture, pursuant to Chapter 534, F.S., naming the owners thereof as W.G. Kilbee, R.L. Kilbee, Pearl Yarborough and Margie Tillis (the beneficiaries of the Kilbee trust). Said section of the Florida Statutes provides that if recorded marks and brands are not renewed every five years they lapse after a specified waiting period.
The general rule seems to be that in the absence of a statute so providing, evidence of ownership of a brand while relevant to the question of ownership of cattle bearing said brand is not prima facie evidence of ownership, but is a factor to be considered in connection with all the other evidence of ownership. 4 Am.Jur.2d, Animals, § 9; 3A CJS. Animals § 18. Certainly, the continued use of said brands on some definite pattern would be additional persuasive evidence of the intent of the parties. However, there was no definite pattern which could be tied into maintaining the original ratio of Upper Bit cattle to Lower Bit because the record does *227 not show the original inventory. In addition, according to appellant it was the custom to mark all "bought" cattle Crop Upper Bit unless their ears would not take that mark, in which case the animal was marked Lower Bit. Thus, it appears there was no definite pattern established to preserve an ownership ratio of the two individuals.
Besides the different marking of animals over the years, there was evidence adduced regarding the ownership of the two different brands and marks and evidence of the general reputation in the area as to ownership. However, the ownership of the brands and marks doees not mean that the brand owner necessarily owns the cattle. As stated in 4 Am.Jur., 2d, Animals, § 9:
"Ordinarily, in the absence of statutory authorization, the courts hesitate to admit testimony as to the brand an animal bore where it is offered for the purpose of proving ownership, for while the inference is very strong that a characteristic mark must have been impressed by the one who customarily uses it, nevertheless the probative value of such evidence is not so great where the question of ownership is concerned, for any one of a number of circumstances might have subsequently intervened and terminated his ownership if it had ever existed...."
Turning now to the evidence which persuades us that the intention of the parties was that the herd should be owned equally:
a) The partners divided the profits and losses equally.
b) The proceeds from the sale of all cattle, regardless of brand and mark, went into the partnership account and eventually were used either to pay partnership obligations, buy partnership assets, or distributed equally as profit. It is illogical to contend that it was their intention that E.H. Kilbee was to own his herd and W.G. Kilbee his, when if they had sold all of the cattle according to their established pattern they would have divided the profit equally. And if they sold cattle marked Upper Bit and used the proceeds to buy some equipment the equipment according to their pattern would have been owned jointly.
c) Partnership funds were used to buy all of the new cattle and they would have been all branded Upper Bit had their ears been able to take the mark. So there is no consistent pattern to be gleaned from said marking.
d) There was no inventory differentiating the two herds and their respective marks at the commencement of the partnership or at any time during its continuation.
e) W.G. Kilbee operated the business for nearly thirty years without salary or other compensation except one-half interest in the profit.
f) The accountants who had been doing the accounting work for the business for twenty years had assumed the herd was owned by the partners on an equal basis and had maintained the books and records and prepared all federal tax returns on that basis.
g) W.G. Kilbee filed an inventory of the estate of E.H. Kilbee in the county judge's court showing E.H. owned one-half of the herd. The estate tax returns filed by the E.H. Kilbee estate reflected a one-half ownership in the cattle.
In the absence of an agreement between partners specifying the proportionate interest of each in the partnership property there exists a rebuttable presumption that the interests of the partners are equal. 1 Rowley on Partnerships, 2d Ed. § 18D, p. 477. That presumption, supported by the other indicia of equal ownership in the record, convinces us that the intention of E.H. Kilbee and W.G. Kilbee at the inception of the partnership was to contribute *228 their respective herds to equal ownership in the partnership. Thus, we feel the trial court misconstrued the legal effect of the evidence.
The questions raised by appellant's first and second points are answered by the foregoing conclusions. The third point is directed to the appointment of a special master to take an accounting. Appellant complains that the accounting issues were already tried. However, throughout the trial the court expressed concern about the completeness of the accounting evidence. No audit was made, and the evidence adduced pertained primarily to financial statements prepared over the years. Finally, the certified public accountant, Green, testified that the financial statements were not sufficient to wind up the partnership affairs. Accordingly, we find no fault with this aspect of the final judgment.
Finally, Point IV takes issue with the court's appointment of a receiver to take possession of the partnership assets and protect the business by operating it in keeping with standards of good husbandry. Under the circumstances with which the trial court was faced, i.e., a going business, the need for daily care of livestock and all of its ramifications, appellant has failed to demonstrate error in that respect.
Appeal # 73-1231 is from an interlocutory order rendered October 2, 1973, in which the trial court authorized the receiver, previously appointed in the "final judgment" of June 15, 1973, to set aside certain pasture land acreage for the exclusive use of Edward Yarborough, as executor of the estate of W.G. Kilbee, deceased and individually, and certain acreage for the exclusive use of the receiver. Part of said total acreage is titled in the name of E.H. Kilbee and W.G. Kilbee jointly, part is in the name of W.G. Kilbee individually, and a small part in Edward Yarborough, individually.
We find no error in the order of the trial court authorizing the use by the receiver of that acreage owned jointly by E.H. Kilbee and W.G. Kilbee and that owned by the W.G. Kilbee estate in view of the necessities of the partnership dissolution as referred to in the earlier portion of this opinion. Any rights accruing to the W.G. Kilbee estate for rental value or otherwise as a result of the use of said property by the receiver can be adjusted in the accounting ultimately to be approved by the trial court. An additional reason for approving said authorization is that Count II of the appellees' counterclaim asserts an interest in numerous parcels of said acreage in the name of W.G. Kilbee individually, so that said property is involved in this litigation.
We do find error in that portion of said order of October 2, 1973, authorizing the use by the receiver of that property belonging to Edward Yarborough, individually. We find no basis in the record to deprive him of the exclusive use of his own property as to which there is no claim made by any other party herein.
Appeal # 74-411 is an interlocutory appeal from an order entered February 28, 1974, further dealing with the receivership. Said order, among other things, provided for the termination of the receiver's duties as of a certain date, directed him to deliver the combinations and keys to the locks on various pasture gates, directed him to file a final accounting with certain recommendations, and directed him to distribute the bulls in the herd according to good husbandry standards so that they would be cared for abiding the court's ultimate decision herein.
Appellant's first point questions the trial court's jurisdiction to proceed with the receivership since appellant has pending an appeal from the "Final Judgment" of June 15, 1973 wherein the receiver was appointed. As we pointed out earlier, the order or judgment of June 15, 1973 is not a final *229 judgment. Even as to Count I, the judicial labor has not ended. The judgment of June 15, 1973 is interlocutory in nature since it is an order deciding the issues in one count of a multicount counterclaim while other counts remain awaiting trial, and all of the counts are interrelated and involve the same transaction. S.L.T. Warehouse Company v. Webb, et al., Supreme Court, 304 So.2d 97, Opinion filed November 27, 1974; Mendez v. West Flagler Family Assn., Supreme Court, 303 So.2d 1, Opinion filed November 6, 1974. Although the appointment of the receiver in the judgment of June 15, 1973 is assigned as error, the judgment is not superseded. There is authority for the appointment of a receiver even in the case of a superseded judgment where it is necessary for the preservation of property pending appeal. Brown v. Marion Mortg. Co., 107 Fla. 727, 145 So. 413 (1932). Thus, the trial court had jurisdiction to consider the matters presented in the order of February 28, 1974.
With the exception of the inclusion of the Yarborough property referred to above, we also find no error in the other aspects of the order of February 28, 1974.
In conclusion, the order entered June 15, 1973, and the subject of the appeal in Case # 73-864 is reversed and remanded with directions to divide the herd of cattle and other partnership personal property equally in accordance with this opinion, and to proceed to conclude the accounting (unless the issues made in Count II of the amended counterclaim preclude it), including the allocation of the costs and expenses of the receivership and any other equities which may have accrued to any of the parties as a result of the use of their property in winding up the dissolution of the partnership.
The orders appealed from in # 73-1231 and # 74-411 are affirmed in all respects except as to the inclusion of that property owned by Edward Yarborough individually. As to said property said orders are reversed with directions to deliver possession of said property to Edward Yarborough if that has not already been accomplished.
OWEN, C.J., and WALDEN, J., concur.