ALLEN, Judge.
In this workers’ compensation appeal, the claimant, Juan Lopez Fleitas, challenges an order of the judge of compensation claims denying his request for correction of his average weekly wage. Because we agree with the judge’s conclusion that the claimant’s average weekly wage was correctly computed, we affirm.
On April 11, 1990, the claimant was driving a truck for Today Trucking, Inc. (hereinafter Today) when he sustained injuries in a traffic accident. The claimant, who drove his own truck and paid for his own fuel, maintenance and repair expenses, was not a Today employee at the time. Pursuant to a contract with Today, however, he was covered by the company’s workers’ compensation insurance policy. The contract, which specifically identifies the claimant as an independent contractor, not an employee, provides in pertinent part:
Drivers working under this Agreement shall not be considered employees of Today. However, the Drivers qualify to be covered under the Today Truck Drivers Workmens’ Compensation policy and, therefore, Driver shall be covered by Workmens’ Compensation in the face amount of TWO HUNDRED AND FORTY DOLLARS ($240.00), per week with said premises to be paid by Today.
The employer/carrier accepted the claimant’s accident as compensable and began *253 paying the claimant benefits based upon an average weekly wage of $240. Soon thereafter, the claimant requested correction of his average weekly wage and the dispute was set for hearing.
At the hearing before the judge of compensation claims, the claimant testified that he began working for Today about eight weeks before his accident. He explained that he was paid according to the tonnage he hauled and represented that in the eight weeks of his employment, he had always earned more than $240 per week. The claimant argued that he was entitled to benefits based upon an average weekly wage of about $512 per week, which figure more closely approximates his revenue less his expenses. Today’s president, Rulio Montero, testified that the $240 per week figure in the contract represents the average weekly pay earned by Today’s truck driver employees. He opined that when independent contractors, like the claimant, deduct from their take-home pay their fuel costs, tire and repair expenses, interest on loans and depreciation, they do not earn much more than $240 per week. According to Montero, all of the company’s independent contractor drivers who wish to participate in Today’s workers’ compensation plan are listed with the carrier at the $240 per week rate. Today’s premiums are based upon that wage figure and the company passes onto its independent contractors a $53 per week charge for participating in the workers’ compensation plan.
In the appealed order denying the claimant’s request for correction of his average weekly wage, the judge accepted the parties’ stipulation that the claimant was an independent contractor covered, by agreement, under Today’s workers’ compensation policy. He noted the difficulty a carrier would have in accurately determining an independent contractor’s actual loss of earnings in the event of an accident and observed that, in setting premiums, the carrier would have the “impossible task” of auditing the financial records of each and every independent contractor. In contrast, determining the extent of the risk of an employee’s wage loss is different for employees’ earnings are found in the company’s payroll records which are available for audit by the carrier. Ultimately, the judge concluded,
I find no legal or public policy argument that would prevent an independent contractor from contracting with a contractor/carrier for the amount of benefit he would pay premium on, and the indemnity benefit he would receive in the event of injury, so long as that agreement is reasonable and bears a reasonable relationship to the actual value of the service provided. In the case of most independent contractors, such a procedure would be welcomed in that it would allow the individual to ascertain a benefit level without the necessity of making continual, ongoing record audits and changes. The agreement would not, of course, affect or in any way limit the right to or amount of medical care.
On appeal, the claimant argues that because the employer/carrier did not mention the contract in the pretrial stipulation, he did not receive adequate notice of their position. Because the record reveals that the contract was admitted into evidence, without objection, at the very start of the hearing and all of the witnesses were examined about it, also without objection, we reject his argument. In our view, the record conclusively shows that the issue concerning the propriety of the employer/carrier’s reliance upon the contract in setting the claimant’s average weekly wage was tried by consent of the parties. See Herb’s Exxon v. Whatmough, 487 So.2d 1169, 1173 (Fla. 1st DCA 1986). We also note that the claimant has not attempted to articulate how he was prejudiced by the employer/carrier’s failure to specifically mention the contract in the stipulation.
The claimant also asserts as error the judge’s decision that his average weekly wage is the rate set out in the contract, not his actual wages. He complains further that it is not reasonable or fair to base his average weekly wage upon the contract rate because the contract contemplates “temporary labor as may be required on a job by job basis” and he worked full-time *254 for the company. We reject these arguments. Like the judge of compensation claims, we view the contract as an offer by the company to provide workers’ compensation benefits to independent contractors otherwise not entitled to them. By electing coverage under Today’s workers’ compensation policy and paying $53 per week for that coverage, the claimant became entitled to all the benefits afforded by chapter 440, Florida Statutes, with one limitation. He specifically agreed that in the event of injury, his average weekly wage would be based upon wages of $240 per week; it would not be computed under section 440.-14. Where, as here, the contract rate bears a rational relationship to the claimant’s actual wages and the claimant would not be entitled to any benefits but for the contract, we see nothing wrong with the parties’ agreement to set a limit upon the carrier’s exposure for disability and wage loss claims in this manner. While section 440.21(2) invalidates any agreement in which an employee waives his right to compensation under chapter 440, it is silent about an independent contractor’s right to limit his contracted-for entitlement to benefits in exchange for a fixed, and presumably lower, premium. Cf. Bienvenido v. Fontainebleu Hotel, 128 So.2d 1 (Fla.1961) (recognizing the right of an employer and an employee to agree, for workers’ compensation purposes, upon a fixed value for the employee’s food allowance); and I.A.T.S.E. v. Nesselroad, 534 So.2d 709, 710 (Fla. 1st DCA 1988) (noting that absent fraud, overreaching, misrepresentation or concealment, the parties’ post-injury stipulation regarding the claimant’s average weekly wage will be binding).
Accordingly, the order of the judge of compensation claims denying the claimant’s request for correction of his average weekly wage is affirmed.
SMITH and ZEHMER, JJ., concur.