655 So.2d 1134 (1994)
MAYFLOWER CORPORATION and Crawford & Company, Appellants,
v.
Wilma O. DAVIS, Appellee.
No. 93-3953.
District Court of Appeal of Florida, First District.
December 29, 1994.
*1135 Robert W. Bleakley of Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Tampa, for appellants.
Richard R. Roach, Lakeland, and Bill McCabe, Longwood, for appellee.
SMITH, Senior Judge.
The employer/carrier (E/C) appeal an order of the judge of compensation claims (JCC) ordering the E/C to pay Claimant benefits based on an average weekly wage (AWW) calculated according to the premium basis upon which Claimant paid workers' compensation insurance premiums instead of section 440.14(1), Florida Statutes. We affirm.
Claimant was injured while on duty with Mayflower Corporation on January 26, 1987. The E/C accepted this injury as compensable and began paying Claimant benefits. On May 14, 1993, Claimant filed a claim seeking, among other things, a determination of the AWW. At the trial, the parties settled all issues except for the amount of AWW.
In the early 1980s, Claimant's husband began driving a truck for Mayflower as an independent contractor. A couple of years later, Claimant became qualified to drive and began driving with her husband as a team. The evidence established, and the JCC found, that Claimant and her husband operated as partners, and that she was paid from his earnings at Mayflower. Under this arrangement, Mayflower neither knew how much Claimant received nor had any control over it. Claimant and her husband never discussed how much Claimant would be paid. When Mr. Davis received a check from Mayflower, he simply deposited it into their joint account from which both of them withdrew funds as needed.
Mayflower's arrangement with Mr. Davis provided that he would receive 56% of the line haul, the amount Mayflower charges its customers for transporting their goods. Each month, Mr. Davis received a statement from Mayflower indicating the amount of line haul or other income he was to receive as well as any draw he had taken for monthly expenses and any deductions for insurance or other charges. The hauling income was then reported on Form 1099, which the Davis' used to calculate their income tax. Since the Davis' drove their own truck, which they were purchasing under a lease agreement, they were responsible for making payments on the truck and for paying all their other expenses, including fuel, maintenance and repairs, uniforms, workers' compensation charges, bank charges, meals and lodging out of their income. Thus, even though the Davis' hauling income for 1986 was $114,466.05, their adjusted gross income after expenses was only $11,939.20.
Mayflower required that Claimant be covered by workers' compensation insurance, and Mr. Davis' contract specifically required that he pay workers' compensation premiums through Mayflower. Mayflower set the premium basis on their policies and deducted the premiums from its drivers' income. Each Mayflower driver was charged the *1136 same amount of premium based upon a premium basis of $44,669, which was an estimate of a driver's earnings. Mr. Davis is listed as the insured on the Claimant's policy, which states that it covers "all employees and drivers including partners." There is no contention that Claimant is not covered under this policy. The Davis' paid premiums on this policy for five years and during that time neither the premium basis nor the premium amount was changed. The Davis' income was never audited to determine whether the basis was correct and the Davis' never received a rebate of premium.
A hearing was held in this cause on October 19, 1993 before Judge William D. Douglas to resolve the issue of the correct method for calculating the AWW. Claimant contended that her correct AWW was $429.51 because she and Mr. Davis had contracted with Mayflower for that amount in their workers' compensation insurance policy. The E/C, however, argued that Claimant's AWW should have been calculated according to section 440.14(1), Florida Statutes, which requires that it be based upon the average wage earned by the claimant during the thirteen weeks immediately preceding the accident. The JCC concluded that $429.51 was the correct AWW, based on his finding that the parties had contracted for that amount. In making this decision, the JCC relied upon Fleitas v. Today Trucking, Inc., 598 So.2d 252 (Fla. 1st DCA 1992), which held that an independent contractor's AWW may be based on a rate contracted for in the company's workers' compensation policy rather than a rate computed under section 440.14(1) as long as the contract rate bore a reasonable relationship to the claimant's actual wages and the claimant would not have otherwise been entitled to any benefits.
The E/C argue on appeal that the premium basis listed in the workers' compensation policy did not constitute a stipulated AWW and that Claimant's AWW should have been based upon section 440.14(1) rather than the estimated earnings contained in the policy. They also argue that this case is distinguishable from Fleitas because there the contract terms were specific  the policy stated the specific AWW to be used in the event of an injury  whereas here the contract does not delineate a specific AWW and no other evidence has been presented that the parties intended to contract for an AWW. According to the E/C, even if the parties had contracted for an AWW, the JCC erred in finding that Claimant was entitled to 50% of the premium basis amount because Claimant did not work daily with Mr. Davis during the thirteen weeks preceding her accident. Lastly, the E/C argue that Fleitas cannot be applied here because the current contract rate does not bear a rational relationship to Claimant's actual earnings. We disagree with the E/C's arguments and affirm.
Obviously, methods other than that set forth in section 440.14(1) may be used to calculate a claimant's AWW. Not only was this done in Fleitas, but this Court has previously approved other creative methods of determining the AWW that were tailored to fit the characteristics of a specific situation. Prestressed Decking Corp. v. Medrano, 556 So.2d 406 (Fla. 1st DCA 1989) (approving an AWW calculated according to the contract of employment instead of the statute); Waldorf v. Jefferson County School Bd., 622 So.2d 515 (Fla. 1st DCA 1993) (affirming the JCC's innovative approach to calculating the AWW of a substitute bus driver who only worked four weeks out of the year).
Here, the JCC was free to use a method other than that delineated in section 440.14(1) as long as that method had a foundation in Florida law. The JCC found the instant case similar to Fleitas, where this Court affirmed an AWW derived solely from the claimant's workers' compensation policy. 598 So.2d at 252. In Fleitas, the claimant, an independent truck driver who drove his own truck and paid his own expenses, was covered by the company's workers' compensation policy pursuant to an agreement under which he paid the premiums. Id. The policy in issue there stated that drivers of Today Trucking were "covered by Workmens' Compensation in the face amount of ... $240.00, per week with said premises to be paid by Today."
In a dispute over the correct AWW, claimant argued that he was entitled to benefits based on an AWW of $512 per week, which *1137 approximated his revenue less expenses. However, Today argued that Claimant's premiums should be based upon an AWW of $240 per week, the average weekly pay as specified in the policy. The JCC agreed that the correct AWW was the contract amount and stated that he did not see any problem with an independent contractor contracting for the amount of benefits he would pay premium on "so long as that agreement [was] reasonable and [bore] a reasonable relationship to the actual value of the service provided." Id. at 253. This Court affirmed the use of the contract rate in circumstances where it "bears a rational relationship to the claimant's actual wages and the claimant would not be entitled to any benefits but for the contract." Id. at 254.
We affirm the JCC's order awarding Claimant benefits based on an AWW of $429.51. Like the claimant in Fleitas, the claimant here is also an independent truck driver who would not be entitled to workers' compensation benefits but for the contract providing for coverage. Claimant's contract with Mayflower, which was evidenced by the workers' compensation policy and the Davis' course of dealing with Mayflower, and the payment of a specific premium that remained unchanged over a period of years, was properly construed by the JCC as entitling Claimant to a specific amount of benefits that bore a rational relationship to the wages she would actually earn in her employment.
Appellants argue that the rate in the workers' compensation policy may not be used to calculate Claimant's AWW because the Fleitas court required that the contractual terms be specifically stated in order to use the policy to determine the AWW. This narrow reading of Fleitas is not warranted by the court's discussion. The court merely said that Juan Lopez Fleitas had specifically agreed to an AWW of $240; it did not enunciate a requirement in all cases that the agreement be specifically spelled out in the policy. 598 So.2d at 254. The intention of the parties governs the construction of contracts. Hughes v. Professional Ins. Corp., 140 So.2d 340 (Fla. 1st DCA 1962). Where a contract is ambiguous or its meaning is doubtful, the circumstances surrounding the parties may be considered in ascertaining the parties' intentions. Tampa Fed. Sav. & Loan Ass'n v. Aeon, Inc., 403 So.2d 1002 (Fla. 2d DCA 1981). Further, the interpretation the parties give to a contract may be the best indication of their intentions. Reinhardt v. Reinhardt, 131 So.2d 509 (Fla. 3d DCA 1961). Courts have also looked to the conduct of the parties throughout their course of dealings to determine their intentions and the meaning of the agreement. Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 302 So.2d 404, 407 (Fla. 1974); Mesch v. Berry, 528 So.2d 1250, 1251 (Fla. 1st DCA 1988). Finally, any ambiguity should be construed against the party that drafted the written contract provision. Aeon, Inc., 403 So.2d at 1004.
Given these rules of construction, the JCC did not err in finding that Claimant and Mayflower intended that any benefits received by the insured under this policy be based upon the premium basis contracted for, which represented the policyholders' estimated earnings. The parties' course of dealing supports this interpretation. As mentioned earlier, the carrier never audited Claimant's earnings or refunded any premium to the Davis'. If the carrier had intended to pay benefits based on the policyholders' actual earnings, it would have sought to ascertain the value of those earnings and adjusted the premiums accordingly. Instead, both parties opted for an easier route, agreeing on a projected earnings level at the time they entered into the contract and continuing to apply that figure throughout the life of the contract.
This Court has previously affirmed AWW determinations stipulated to by both parties after an industrial accident. Williams v. Kraft, Inc., 585 So.2d 1120 (Fla. 1st DCA 1991); I.A.T.S.E. v. Nesselroad, 534 So.2d 709 (Fla. 1st DCA 1988). And, the Supreme Court has upheld a pre-accident stipulation as to the value of meals. Bienvenido v. Fontainebleau Hotel, 128 So.2d 1 (Fla. 1961). An agreed upon AWW should also be allowed in this instance, especially in light of the fact that the actual earnings of an independent truck driver are difficult to calculate. Since parties can stipulate to an AWW after an *1138 accident, there is no reason to prohibit them from doing it before the accident occurs. As a matter of fact, stipulations as to the amount of benefits to be paid under an insurance policy are routine in some forms of coverage. § 627.702, Fla. Stat. (1993) ("In the event of the total loss of any building, ... the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.").
Appellants also argue that the estimated earnings listed in the contract do not bear a rational relationship to Claimant's actual earnings, as required by Fleitas. While it is clear that the Fleitas court only allowed the contract rate to be used in cases where it bears a rational relationship to the claimant's actual wages, in the present case there are no specific numbers available from which to determine, with any degree of mathematical certainty, whether Claimant's actual earnings bear a rational relationship to the contract amount. The E/C assert that the contract rate is 3.74 times Claimant's actual wage, which is one half the amount reported on the Davis' 1986 income tax return, or $5,969.60. However, there is nothing to support the E/C's contention that this constitutes Claimant's actual wage for purposes of making this comparison. Claimant's specific situation must be analyzed to determine her actual wage. For instance, business expenses for a self-employed person may be handled differently depending on the business involved. Happle Solar Contractors v. Happle, 547 So.2d 1035 (Fla. 1st DCA 1989); Florida Timber Prods. v. Williams, 459 So.2d 422 (Fla. 1st DCA 1984) (depreciation of equipment constitutes an expense); Alterman Transp. Lines, Inc. v. Goetzman, 430 So.2d 486 (Fla. 1st DCA 1983) (rental value of equipment should be deducted from wage). Thus, an accurate determination may not be made without a full analysis of the situation. Although the E/C urge that the use of the tax return is proper, this court has held that "tax returns are not conclusive on this issue." Alterman, 430 So.2d at 487. It is also improper for a JCC to determine the AWW by deducting business expenses from claimant's earnings for the year and then dividing it by the number of weeks in a year. Apholz v. North American Van Lines, 427 So.2d 1094, 1095 (Fla. 1st DCA 1983).
Despite the uncertainty involved, we do not think it is necessary to remand for a determination of Claimant's actual wages. In Fleitas, the contract rate was 2.13 times the claimant's actual wages and there, the JCC required only that the contract rate be reasonably related to the value of the service provided, which test Claimant clearly meets here, where the $44,669 annual figure utilized by the JCC was the estimated wages of Mayflower's drivers as determined by Mayflower itself.
Finally, although the E/C argue that because Claimant did not work during most of the preceding thirteen week period, the JCC erred by finding that her AWW was 50% of the premium basis, we find Claimant's testimony that she was in partnership with her husband, with no evidence to the contrary, provides competent substantial evidence to support the JCC's finding. The general rule is that partners split profits equally unless otherwise agreed. Yarborough v. Kilbee, 307 So.2d 223 (Fla. 4th DCA 1975). Further, there is no other clear evidence to the contrary. We accept Claimant's uncontroverted testimony that she and Mr. Davis merely deposited the money from Mayflower into their joint account and withdrew it when needed. Lastly, unless this Court requires the JCC to figure the AWW according to section 440.14, it is irrelevant whether Claimant worked during the thirteen weeks preceding the accident. It is also irrelevant under a partnership analogy, where partners split profits equally regardless of their participation in the business.
For the foregoing reasons, we AFFIRM the JCC's order.
ERVIN and LAWRENCE, JJ., concur.