

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-31-2005

# Sensormatic Elec v. First Natl Bank PA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2874

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sensormatic Elec v. First Natl Bank PA" (2005). *2005 Decisions.* Paper 634.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/634

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

Nos. 04-2874 and 04-3086

———

SENSORMATIC ELECTRONICS CORPORATION,

v.

FIRST NATIONAL BANK PENNSYLVANIA;
WINNER & BAGNARA, INC.; JAMES E. WINNER, JR.,

Sensormatic Electronics Corporation,

Appellant in 04-2874

Winner & Bagnara, Inc. & James E. Winner, Jr.,

Appellants in 04-3086

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 99-cv-00756)
District Judge: Honorable Arthur J. Schwab

———

Argued July 11, 2005

Before: SLOVITER and McKEE, Circuit Judges, and FULLAM, District Judge[*]


(Filed: August 31, 2005)

———

[*]Hon. John P. Fullam, Senior Judge, United States District Court for the Eastern District
of Pennsylvania, sitting by designation.

Peter Buscemi, Esq.
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

Kell M. Damsgaard, Esq. (ARGUED)
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

Alfred J. Lechner Jr., Esq.
Morgan, Lewis & Bockius
502 Carnegie Center
Princeton, NJ 08540

*Counsel for Appellant/Cross-Appellee Sensormatic Electronics Corporation*

Stuart C. Gaul Jr., Esq.
Joseph A. Katarincic, Esq. (ARGUED)
David G. Ries, Esq.
Thorp, Reed & Armstrong
310 Grant Street
One Oxford Centre, 14th Floor
Pittsburgh, PA 15219

*Counsel for Appellees/Cross-Appellants Winner & Bagnara, Inc.*
*and James E. Winner, Jr.*

Scott D. Cessar, Esq. (ARGUED)
Eckert, Seamans, Cherin & Mellott
600 Grant Street
44th Floor
Pittsburgh, PA 15219

*Counsel for Appellee First National Bank Pennsylvania*

———

OPINION

———

FULLAM, <u>Senior District Judge</u>.

Sensormatic appeals from the orders of the United States District Court for the Western District of Pennsylvania, granting summary judgment in favor of First National Bank ("First National"), James E. Winner ("Winner") and Winner & Bagnara ("W&B") on Sensormatic's claims for specific performance, declaratory relief and damages. The District Court had diversity jurisdiction under 28 U.S.C. § 1332; this court has jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons explained below, we affirm.

**I.**

In reviewing a grant of summary judgment, we must view "the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995).

In June, 1967, Winner, through his wholly-owned corporation W&B, was granted rights to operate the Pennsylvania franchise of Sensormatic. Not long thereafter, Sensormatic concluded that the franchise system was not an effective means through which to sell its product , and began a repurchase or lease-back program. The structure of the subsequent agreement reached between W&B and Sensormatic is at the center of this litigation.

Under the terms of the Franchise Lease Agreement ("FLA"), Winner granted Sensormatic a 20 year lease beginning on December 1, 1978 and ending December 1, 1998. The FLA gave Sensormatic the right to terminate the FLA on eleven occasions during the term, and also gave Sensormatic the right to repurchase at the end of the term,

3

in exchange for a lump sum payment.  App. at 715-717.  The total value of the deal for Winner was in excess of $6,500,000.

The option to repurchase the franchise at the end of the lease term is set forth in Section 7 of the FLA, as follows:

> W&B hereby grants to [Sensormatic] the option to purchase. . .all right, title and interest of W&B under the Franchise Agreement, for a purchase price of $1,000,000.  Such option shall be exercisable only at the end of the term of this Agreement and may be exercised by [Sensormatic] giving W&B not less than ninety (90) days written notice prior to the end of the term hereof. . . .The closing of the purchase upon exercise of such option shall take place at the offices of [Sensormatic] within ninety (90) days of the end of the term of this Agreement at a time specified by [Sensormatic] on at least ten (10) days notice to W&B.  At the closing, [Sensormatic] will deliver a certified or bank cashier's check for the purchase price, and W&B and Winner shall deliver to [Sensormatic]. . .a release substantially in the form annexed hereto as Exhibit B. . . .

App. at 716.

At the same time the FLA was signed, the parties also entered into the Restated Franchise Agreement ("RFA") to govern the scope of the Franchise.  App. at 843.  The RFA described the rights of the parties with regard to assignment and outlined the

4

universe of products covered by the franchise.

After execution of the FLA and RFA, Sensormatic removed the Winner name from all business operations and inserted its own service and support personnel. During this time period W&B executed an agreement that purported to assign the franchise to Winner, but did not obtain approval from Sensormatic; W&B then executed an out of existence letter. On September 21, 1979, the payments under the FLA were assigned to First National as collateral for Winner's line of credit.[1] From that point on, Sensormatic conducted all business related to the franchise through First National.

Sensormatic fully performed under the FLA for the entire term. On October 13, 1998, 47 days before the end of the lease term, Sensormatic sent written notice of its intent to exercise the repurchase option; thereafter, Sensormatic notified First National that it intended to complete final payment and initiate the purchase. At that time, First National informed Sensormatic that "everything looked fine" and that the transaction was ready to proceed. Winner had no role in this process, though he did request that the final payment be made in 1999 for tax purposes.

In November, 1998 First National informed Sensormatic that it felt uncomfortable moving forward without Winner. In January, the final releases were sent to Winner and First National but neither party responded. The next communication was a letter sent by Winner to Sensormatic stating that Sensormatic was in default under the FLA for failing

---

[1]Article 6 of the RFA provides that the Franchisee cannot assign the Agreement without prior approval and right of first refusal of Sensormatic. However, that provision in no way affects the right of the Franchisee to assign payments under the Agreement.

to tender payment by February 28, 1999.  Sensormatic then filed suit in the District Court to compel Winner and First National to perform under the FLA and sell back the franchise.

In two separate opinions, the District Court entered summary judgment in favor of First National, Winner and W&B, ruling that Sensormatic had failed to exercise its option in a timely manner, hence the option had expired.  The District Court also held that Winner was the owner of a franchise that now includes the expanded product line of Sensormatic.

## II.

We review a grant of summary judgment de novo, applying the same standard as the District Court.  Union Pacific R.R. Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125 (3d Cir. 2002).  Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is genuine only where the evidence is such that a reasonable jury could find for the non moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  If the court, after reviewing the evidence in this light, concludes that "the evidence is merely colorable . . . or is not significantly probative" then summary judgment may be granted.  Id. at 249-50.

## III.

Under Florida contract law, the Court must determine the intent of the parties.[2]

_____

[2]The parties chose Florida law in the Agreement, and there does not appear to be any relevant conflict between Pennsylvania and Florida law.

Mayflower Corp. v. Davis, 655 So. 2d 1134 (Fla. Dist. Ct. App. 1994). Where there is no ambiguity, the actual language of the contract is the best evidence of intent. United States v. South Atlantic Production Credit Assn., 606 So. 2d 691, 695 (Fla. Dist. Ct. App. 1992). A contract is ambiguous only if it is "susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract. . ." Miller v. Kase, 789 So. 2d 1095, 1097 (Fla. Dist. Ct. App. 2001). Only if an ambiguity exists may the Court then consider parol evidence of intent.

The FLA is unambiguous with regard to the time requirements of the repurchase option. The FLA states that the "option *shall* be exercisable only at the end of the term. . ." and that the option "*may* be exercised by [Sensormatic] giving W&B not less than ninety (90) days written notice. . ." Sensormatic argues that use of the term "may" is ambiguous and indicates that the written notice provision is optional, especially since the term "shall" was used in the preceding clause.

Were Sensormatic's position accepted, the requirement of written notice would be a nullity. This clearly was not the intent of the parties, as expressed in the contract as a whole. As the District Court correctly held, "[i]t is not reasonable to read the notice provision entirely out of the agreement, or to read it as meaning that any 'reasonable' notice is sufficient. If the parties intended any type of notice to suffice, there would have been no need to include the 90-day provision, or the 'in writing' provision." App. at 18. As a matter of law, Sensormatic failed to exercise its option to purchase in a timely manner.

7

Sensormatic also argues that forfeiture of an option based on a 47 day delay is not a just result under Florida equity law. It contends that, despite the late notice, it was ready, willing and able to perform the sale by February 28, 1999, and the doctrine of substantial performance should be invoked to force Appellees to complete the transaction. See Burger King v. Mason, 710 F.2d 1480, 1490 (11th Cir. 1983) (holding that "a party who tenders late may enforce the contract with due allowance for any damages caused by tardiness"); Dugan v. Haige, 54 So. 2d 201 (Fla. 1951) (finding that where the parties entered into a 10 year lease with an option to renew on 30 days notice, and where tenant gave 12 days notice, the owner could not refuse to renew where he had not been harmed by the delay and fairness compelled renewal).

The fundamental flaw in Appellant's position is that at the time it tendered performance there was no contract to enforce: the option had expired on December 31, 1998, and no purchase contract could have been formed thereafter without bilateral agreement. The time period for acceptance of the option was expressly limited by the terms of the FLA, Sensormatic did not act within this time, and as a result the option was forfeited. Since the purchase option is the only provision under which Sensormatic could claim a right to buy the franchise, failure to properly invoke that option resulted in the loss of the purchase right. Sensormatic is a sophisticated entity that was fully aware of the terms of the FLA when that agreement was signed and cannot now be heard to complain that the result is unfair, especially since the timing of the notice was completely under its control. This result is in accord with Florida law. See Matthews v. Kingsley,

8

100 So. 2d 445 (Fla. Dist. Ct. App. 1958) (when an option contract specifies the time for notice, it is held in law and equity that the stated time is to be regarded as of the essence, whether expressly stated so or not); South Investment Corp. v. Norton, 57 So. 2d 1, 2 (Fla. 1952) (holding that an option contract is not a contract of sale, it is a unilateral contract providing the option holder with the right to purchase).

Sensormatic's waiver argument also lacks merit. Sensormatic alleges that the actions of First National and Winner had the effect of waiving an objection to the late notice. Specifically, Sensormatic points to Winner's request that the final payment be made in 1999 for tax purposes, and First National's statement that "everything looked fine" as indicative of the parties understanding that notice was not an issue.

However, as Appellees note, Florida law on waiver requires some affirmative action by the parties before the Court will recognize waiver of a contract provision. See Peninsula Fed. Savings & Loan v. DKH Prop., 616 So. 2d 1070 (Fla. Dist. Ct. App. 1993) (holding that where plaintiff claimed it had provided oral notice of option acceptance and defendant failed to object, waiver could be considered); Pan Am. Eng'g Co. v. Poncho's Construction Co., 387 So. 2d 1052, 1053 (Fla. Dist. Ct. App. 1980) (holding that where sub-contractor performed pursuant to an oral change order, the possibility of fraud allowed the modification to stand). In this case the record shows that no affirmative action to waive the 90-day notice provision was taken by any party, hence the no waiver argument fails.

**IV.**

9

We also affirm the District Court's order defining the scope of the franchise and granting W&B and Winner ownership rights. Sensormatic first argues that the District Court erred in holding that it could not terminate the franchise in 2004 based on Winner's assignment in violation of Section 6 of the RFA. We find that Sensormatic's purported termination was not valid because W&B's business operations and assignment did not breach the RFA.

W&B is a Pennsylvania corporation, and under Pennsylvania law a corporation may dissolve only by complying with 15 Pa. C.S. §§ 1972-1977, steps which were not taken here. Merely signing an out of existence letter did not eliminate W&B as a corporate entity, thus allowing the company to maintain a business identity as required by the RFA. Moreover, if Winner's attempt to transfer the franchise from W&B's name to his own succeeded, any such assignment would have been void under the terms of the RFA, rather than a basis for terminating the RFA.

## V.

The final issue, raised by both Winner and Sensormatic, has to do with the proper scope of the franchise now owned by Winner and W&B. We will affirm the scope of the franchise as determined by the District Court.

The RFA contains a definitions section that lists the products covered by the Agreement. Subsection 1(e) describes "Automatic Theft Detection Uses" as uses "for the prevention and detection of shoplifting and other theft and includes, but is not limited to," the control and surveillance of the inventory, machinery, tools, and equipment sold or used by retailers, wholesalers, manufacturers and freight terminals, and the protection of

10

the items held in libraries, museums, galleries and government institutions.  App. at 687.

Sensormatic argues that the scope of the franchise should only include those items in existence at the time the RFA was signed, because of the phrase "presently being marketed" in the definition of "Detection Devices."  App. at 686.  However, this argument does not mesh with the "use" based definition of the products cited above. Theft Detection Uses are defined in the agreement based on their function, not on the technology used to operate them, and the RFA explicitly states the definition is not limited to those enumerated uses.  For that reason, it is clear that the agreement contemplates an expansion of the uses of those products as technology evolved over the twenty year life of the agreement.

Winner also challenges the District Court's determination of the franchise scope, arguing that additional products, such as access control devices and burglar alarms, also fit the definition of Theft Detection Uses.  Again, the language of the RFA undercuts this position.  Subsection 1(e)(i)-(iv) includes no mention of access control devices or alarm products.  While we have given those sections an expansive reading based on the "use" based definition, the concepts of access control and intrusion alert do not fall within the scope of control and surveillance.

## VI.

For all the above stated reasons, we will affirm the orders of the District Court.

11

Sensormatic Electric v. First National Bank PA
Nos. 04-2874 and 04-3086

SLOVITER, Circuit Judge, dissenting

I respectfully dissent, primarily because I view the relevant document in light of the history of the relationship between the parties.

The Sensormatic System, developed by the Appellant, is an automatic theft detection device in wide use throughout the country. James Winner, through his corporation W & B, purchased the franchise in 1977 for $66,000, which it leased back to Sensormatic. Under the terms of the 1978 Franchise Lease Agreement, Sensormatic agreed to pay Winner an initial sum of $250,000, monthly payments for 20 years totaling $4,766,892.00 and a final payment of $1,000,000. Sensormatic fully performed. The twenty-year term on the lease was set to expire on December 1, 1998. As the majority opinion notes, the Franchise Lease Agreement stated that if Sensormatic chose to purchase the franchise at the end of the lease, it was required to send notice of its intent 90 days before the expiration of the lease. Unfortunately for it, it sent its notice 47 days before the end of the lease term. The late notice did not cause any prejudice, and there is no claim that it did. Nonetheless, the majority holds Sensormatic's option to repurchase expired solely because of the 47-day late notice.

In my interpretation of the documents, I view the Franchise Lease Agreement, irrespective of its title, to be a contract with an option to purchase. Under Florida law, if the Franchise Lease Agreement was a sales contract for the repurchase of the franchise, then Sensormatic would have the defenses of substantial performance and non-material

breach.  See Pullam v. Hercules, Inc., 711 So. 2d 72 (Fla. Dist. Ct. App. 1998) (discussing the defense of substantial performance), Atlanta Jet v. Liberty Aircraft Servs., LLC, 866 So. 2d 148 (Fla. Dist. Ct. App. 2004) (discussing non-material breach).  There is no point to a lengthy discussion in this regard.  The majority views the transaction differently than I do, and accordingly I dissent.