977 So.2d 718 (2008)
Robert STUBBS, Appellant,
v.
BOB DALE CONSTRUCTION and Florida Preferred, Appellees.
No. 1D07-1822.
District Court of Appeal of Florida, First District.
March 25, 2008.
Robert Stubbs, pro se, Appellant.
Cindy R. Galen of Eraclides, Johns, Hall, Gelman, Johanessen & Kempner, L.L.P., Sarasota, for Appellees.
WOLF, J.
Claimant, Robert Stubbs, challenges a final order of the Judge of Compensation Claims (JCC) denying claimant's request for an increase in workers' compensation benefits. The issue before us is whether the JCC erred in denying claimant's request for an average weekly wage (AWW) increase pursuant to section 440.14(1), Florida Statutes (2006). We find the JCC erred and remand for further consideration consistent with the dictates of this opinion.
Claimant worked for Bob Dale Construction (the employer) as a project superintendent in 2002. In October 2002, the employer retained Administrative Concepts (the carrier) to handle its payroll and provide workers' compensation coverage. Upon retaining Administrative Concepts, all employees became leased employees of the carrier who continued to lease employees to the employer until November 2006.
On January 12, 2006, claimant suffered a compensable left ankle and foot injury while working on a project for the employer and as a leased employee of the carrier. On March 24, 2006, following the award of benefits, claimant filed a petition for benefits seeking: (1) an increase in his AWW to $840 weekly or the annual amount requested divided by 52 weeks; (2) correct payment of temporary total disability (TTD)/temporary partial disability (TPD) benefits (based on the requested increase *719 of the AWW); and (3) penalties, interest, and costs and attorney's fees. The JCC denied this request.
Robert Dale, the employer and general contractor, confirmed that claimant worked as a project superintendent and that, as part of his position, he oversaw the construction crew and worked as a liaison between the homeowner and the company. According to Dale, claimant and Dale had not entered into any contract agreements regarding the number of hours claimant would work. Specifically, Dale stated that there was nothing indicating that claimant would necessarily work 40 hours a week.
Dale explained that, due to the fluctuations involved with work in the construction industry, claimant could work only when work was available. He further stated that, in some circumstances, during inclement weather, some holidays, and vacation time, work could not be completed. However, if 40 hours of work were available, claimant would get 40 hours.
Dale reviewed claimant's 13-week wage and earning statement preceding his workrelated accident and acknowledged that claimant had not worked 40 hours per week every week preceding the injury. Dale testified that this was likely attributable to the ending of a project without there being a new project immediately available for claimant to work on.
Claimant introduced a spreadsheet reflecting the hours he worked in the 52 weeks preceding his injury. The record reflects the hours claimant worked between January 2005 and January 2006. The hours range from a low of 12.5 hours per week to a high of 40 hours per week, for an average of 36 hours weekly; thus, although the hours per week differ, a large portion included consecutive 40-hour work weeks.
The parties stipulated to the accuracy of the February 5, 2007, wage statement, reflecting the hours and earnings for the 13 weeks immediately preceding the date of the accident and that the AWW, if based upon this statement, would be $548.42. The parties further stipulated that claimant worked an average of 26 hours in the 13 weeks preceding his injury.
The standard of review in a workers' compensation case as to a question of law is de novo. See Mylock v. Champion Int'l 906 So.2d 363, 365 (Fla. 1st DCA 2005). This case involves the parties' differing interpretations of section 440.14(1), Florida Statutes (2006), which delineates how to compute a claimant's AWW, and provides in pertinent part:
(1) Except as otherwise provided in this chapter, the average weekly wages of the injured employee on the date of the accident shall be taken as the basis upon which to compute compensation and shall be determined, subject to the limitations of s. 440.12(2), as follows:
(a) If the injured employee has worked in the employment in which she or he was working on the date of the accident, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the accident, her or his average weekly wage shall be one-thirteenth of the total amount of wages earned in such employment during the 13 weeks. As used in this paragraph, the term "substantially the whole of 13 weeks" means the calendar period of 13 weeks as a whole, which shall be defined as the 13 calendar weeks before the date of the accident, excluding the week during which the accident occurred. The term "during substantially the whole of 13 weeks" shall be deemed to mean during not less than 75 percent of the total customary hours of employment *720 within such period considered as a whole.
(d) If any of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wages of the injured employee shall be used, except as otherwise provided in paragraph (e) or paragraph (f).
. . . .
(f) If it is established that the injured employee was a part-time worker on the date of the accident, that she or he had adopted part-time employment as a customary practice, and that under normal working conditions she or he probably would have remained a part-time worker during the period of disability, these factors shall be considered in arriving at her or his average weekly wages. For the purpose of this paragraph, the term "part-time worker" means an individual who customarily works less than the full-time hours or full-time workweek of a similar employee in the same employment.
(g) If compensation is due for a fractional part of the week, the compensation for such fractional part shall be determined by dividing the weekly compensation rate by the number of days employed per week to compute the amount due for each day.
(Emphasis added).
The E/C asserts that, because claimant had been employed in his position 13 weeks prior to the accident and because claimant had worked 75% of his "customary hours"  i.e., his available hours  in those weeks, the calculation of AWW should be performed based on section 440.14(1)(a). Claimant, on the other hand, asserts that the JCC erroneously determined that he worked 75% of his "customary hours" in the 13 weeks preceding his injury; he did not work 75% of those hours and, thus, subsection 440.14(1)(a) should not have been used to calculate his AWW. Based on this assertion, claimant argues that section 440.14(1)(d) should be used to calculate his AWW, and this would require a calculation based on his full-time weekly wages over a 52-week period.
The resolution of this issue rests on a determination of whether claimant worked at least 75% of his "customary hours" in the 13 weeks preceding his employment. If so, his AWW calculation must be made pursuant to section 440.14(1)(a). The JCC determined that, based on the testimony, claimant worked sporadic periods of time and had no promise of a 40-hour work week; thus, he could not assert his "customary hours" of employment were 40 hours per week. The JCC determined that claimant's true "customary hours" were his "available hours," or the hours he actually worked. By doing so, the JCC determined that he had worked 75% of his "available or customary hours," and thus section 440.14(1)(a) would apply. This conclusion is an incorrect interpretation of the statute and mandates reversal.
While vast discretion is owed the JCC, the JCC's error was two-fold. First, the JCC erred when it determined that claimant's available hours of employment defined his "customary hours" and proceeded to apply section 440.14(1)(a) based on that analysis. The plain and ordinary meaning of a statutory term controls, especially where the interpretation of the JCC would conflict with the intent of the Legislature. See Campus Commons, Inc. v. Dep't of Revenue, 473 So.2d 1290, 1295 (Fla. 1985) (holding that the plain meaning of term controls where administrative definition would thwart the intent of the statute).
A plain reading of section 440.14(1)(a) indicates that a claimant employed 13 weeks prior to his or her accident and who *721 worked 75% of his or her customary hours during that period should have his or her AWW calculated based on his or her average wage during that 13 weeks. The JCC acknowledged this in her order but stated that claimant's customary hours were akin to his available hours during that 13-week period; thus, claimant had worked 75% of his available hours.
This calculation fails to effectively implement the legislative intent of section 440.14(1)(a), because it assigns as "customary hours" the exact amount of hours claimant worked in the 13 weeks prior to his injury. If that interpretation were correct, there would be no need to write an additional segment into section 440.14(1)(a) requiring a JCC to consider whether claimant worked 75% of his "customary hours." This section was likely included to specifically cover individuals like claimant  employees who worked varying hours, and whose average hours were significantly more than that which they received in the 13 weeks preceding their accident. The JCC's reading of this particular section thwarts the legislative intent to protect individuals similar to claimant. On the facts here, it cannot be disputed that claimant worked significantly fewer hours in the 13 weeks prior to his injury than he customarily worked for his employer. It appears the JCC is bending the statutory language to deny claimant's good faith request for an increase.
Second, the JCC, by applying section 440.14(1)(a), failed to consider other sections of the AWW statute that would more effectively aid in calculating claimant's proper AWW. Based on the above analysis, once the JCC correctly considers claimant's "customary hours," section 440.14(1)(a) will not apply to claimant because it does not appear that in the 13 weeks prior to his injury, he worked 75% of his customary hours. This is not to say that claimant's assertion that he should be considered a 40-hour-a-week employee is correct either; competent substantial evidence supports that claimant was not given a 40-hour per week contract for hire. The truth is that claimant averaged 36 hours weekly during the year preceding his injury. If this 36-hour average were used as claimant's "customary hours," claimant would have worked 72% of his "customary hours" in the 13 weeks preceding his injury; thus, section 440.14(1)(a) would not have applied.
Because section 440.14(1)(a) does not apply, the next inquiry becomes which subsection of 440.14(1) should be used to calculate claimant's AWW. Based on a review of the statute and the record, it appears that either subsection(1)(d) or (1)(f) would apply; however, a JCC needs to determine whether claimant was a full-time or part-time employee to facilitate this determination. Here, claimant worked an average of 36 hours a week in the year preceding his injury. Whether this equates to a full or part-time employment is a question of fact for the JCC. In Mauranssi v. Centerline Utilities Contract Co., 685 So.2d 66, 68 (Fla. 1st DCA 1996), this court noted that:
Section 440.14(1)(d), Florida Statutes (1995), requires that "full-time weekly wages of the injured employee" be the standard for calculating average weekly wages. The decided cases make clear, however, that a "full-time" work week need not be a forty-hour week. For purposes of subsection (1)(d), a "full-time" work week can be fewer than twenty-five hours, Jackson v. Hochadel Roofing Co., 657 So.2d 1266 (Fla. 1st DCA 1995), or as many as forty-five hours per week, Bruck v. Glen Johnson, Inc., 418 So.2d 1209 (Fla. 1st DCA 1982), depending on the injured employee's job history or employment contract. *722 Under subsection (1)(d), "full-time weekly wages should be determined prospectively by using either the contract of employment or the claimant's actual earnings on the job where the claimant is working at the time of the injury." Efficient Sys., Inc. v. Florida Dep't of Labor and Employment Sec, 624 So.2d 343, 345 (Fla. 1st DCA 1993). Determinations under subsection (1)(f) are similarly prospective.
Accordingly, on remand, the JCC shall determine which subsection of section 440.14(1) should be applied to claimant's AWW calculation.
BARFIELD and HAWKES, JJ., concur.